STATE OF NORTH CAROLINA v. TYRONE JAMES REIVES

No. 7511SC854

(Filed 17 March 1976)

1. **Assault and Battery § 14— assault with deadly weapon — sufficiency of evidence**

    Evidence was sufficient for the jury in a prosecution for assault with a deadly weapon with intent to kill where such evidence tended to show that defendant became involved in an altercation in a "joint," defendant pulled a pistol and pointed it at his victim's chest, defendant pulled the trigger but the gun did not fire, defendant thereafter pointed his gun at another man and shot him, and the man subsequently died.

2. **Homicide § 28— accident or misadventure — jury instructions proper**

    In a prosecution for voluntary manslaughter the trial court's instructions on accident and misadventure were proper, and it was not error for the court to fail to define the word "accident."

APPEAL by defendant from *Hall, Judge*. Judgment entered 18 June 1975 in Superior Court, LEE County. Heard in the Court of Appeals 13 February 1976.

Defendant was charged in separate indictments with the murder of Holden Ross, Jr., and with assaulting Clarence Fox, Jr., with a deadly weapon with intent to kill. The State proceeded on a charge of voluntary manslaughter in the murder indictment.

The State's evidence tends to show that Holden Ross, Jr., and his brothers-in-law, James Martin and Clarence Fox, Jr., went to a "joint" known as the Radar Club in Lee County after midnight on 1 March 1975. There was a confrontation between Ross and Reives; Fox went to them and pushed Ross back in an effort to stop the fight. Defendant pulled out a .38 caliber revolver, pointed it at Fox's chest and pulled the trigger, but the gun did not fire. Ross grabbed defendant who "slung" Ross to the floor, and while Ross was sitting on the floor, defendant shot him in the neck and then fled. Ross died soon thereafter.

The defendant's evidence tended to show that Reives was backed into a corner by Ross, Martin and Fox; defendant pulled out his gun; while struggling with Ross the gun fired. Defendant testified he did not intentionally pull the trigger and did not point it at Fox.

Defendant was found guilty of voluntary manslaughter in 75CR1304 and guilty of assault with a deadly weapon in 75CR1305. From judgment of imprisonment, defendant appeals.

*Attorney General Edmisten by Associate Attorney Jesse Brake for the State.*

*J. W. Hoyle for defendant appellant.*

CLARK, Judge.

[1] Defendant's motion for judgment of nonsuit on the charge of assault with a deadly weapon with intent to kill was properly overruled. There was sufficient evidence to support the verdict of guilty of assault with a deadly weapon with intent to kill. A pistol is a deadly weapon *per se*. *State v. Powell*, 238 N.C. 527, 78 S.E. 2d 248 (1953). An unexplained misfiring of a loaded pistol does not change its deadly character. If the pistol used is a deadly weapon and is pointed at the person of another,

then such pointing is an assault with a deadly weapon. G.S. 14-34; *State v. Currie*, 7 N.C. App. 439, 173 S.E. 2d 49 (1970). The altercation, the shooting and resulting death of Ross soon after defendant pointed the pistol at Fox's chest and pulled the trigger, and other circumstances are sufficient evidence of intent to kill. "An intent to kill 'may be inferred from the nature of the assault, the manner in which it was made, the conduct of the parties, and other relevant circumstances.'" *State v. Cauley*, 244 N.C. 701, 708, 94 S.E. 2d 915, 921 (1956). See 1 Strong, N. C. Index 2d, Assault and Battery, § 5, p. 298.

[2]   Defendant contends that his evidence discloses the defense of accidental shooting to the homicide charge, but that the court did not instruct the jury as to the legal principles of accident and misadventure. It appears from the record that the trial court instructed the jury that defendant contended that the shooting was accidental in that he did not pull the trigger and that the State must prove beyond a reasonable doubt an intentional shooting. Further, the court charged as follows: "Now, where death is the result of an accident or misadventure there is no criminal liability. Where it appears that the killing was unintentional, that the defendant acted with no wrongful purpose and that it was not the result of culpable negligence then the homicide would be excused."

We find these instructions properly apply the defense of accident, and that it is not error if the court does not define the word "accident." We find most definitions of "accident" serve only to confuse, if not mislead. See 1 C.J.S., Accident, p. 425, n. 20. The word has a commonly known meaning, and it is generally understood that an act could not be both "intentional" and "accidental." In *State v. Williams*, 235 N.C. 752, 71 S.E. 2d 138 (1952), it was held that where the court charged that the State must prove an intentional shooting, together with a statement of defendant's contentions that he did not intentionally kill, the instructions on accidental death were sufficient in the absence of a request for specific instructions. Though *Williams, supra*, has not been overruled, it is certainly desirable that the trial court, as it did in the case before us, further apply the legal principles by instructing that accident was a defense to the crime of murder or voluntary manslaughter. See *State v. Wingler*, 238 N.C. 485, 78 S.E. 2d 303 (1953), and *State v. Mercer*, 275 N.C. 108, 165 S.E. 2d 328 (1969).

We have carefully examined all other assignments of error, and we find that defendant had a fair trial, free from prejudicial error.

No error.

Judges MORRIS and VAUGHN concur.