UNITED STATES of America,
Plaintiff–Appellee,

v.

James Lee THOMPSON,
Defendant–Appellant.

No. 88–5623.

United States Court of Appeals,
Fourth Circuit.

Argued March 8, 1989.

Decided Dec. 14, 1989.

Robert Crawford Ervin (Byrd, Byrd, Ervin, Whisnant, McMahon & Ervin, P.A., Morganton, N.C., on brief), for defendant-appellant.

Karen Ingrid Skrivseth (Thomas J. Ashcraft, U.S. Atty., Charlotte, H. Thomas Church, Asst. U.S. Atty., on brief), for plaintiff-appellee.

Before WIDENER and PHILLIPS, Circuit Judges, and DOUMAR, District Judge for the Eastern District of Virginia, sitting by designation.

ROBERT G. DOUMAR, District Judge:

James Lee Thompson appeals the sentence imposed upon him by the district court following its finding that Thompson is a career offender under the Federal Sentencing Guidelines. Thompson's career offender status turns on whether a prior South Carolina conviction for pointing a firearm at a person constitutes a crime of violence as that term is defined by the Sentencing Guidelines. We answer this question of first impression in the affirmative and therefore affirm Thompson's sentence.

I

On May 25, 1988, Thompson pled guilty to possessing with intent to distribute 22 grams of heroin, and to distributing 22 grams of heroin, both in violation of 21 U.S.C. § 841(a)(1). The plea agreement between the government and Thompson, pursuant to Rule 11(e)(1)(B) of the Federal Rules of Criminal Procedure, provided that

the government would recommend to the court that any active sentence should not exceed eleven years, even though such a sentence would depart downward from the Sentencing Guidelines if the court found Thompson to be a career offender. The government agreed to make this recommendation because Thompson had provided substantial assistance to the government's investigation of other persons and promised to continue to do so.

Following the district court's acceptance of Thompson's plea, a probation officer prepared a presentence report. The presentence report stated that the applicable Guideline imprisonment range for Thompson was 210 to 262 months, based on the officer's determination that Thompson was a career offender within the meaning of Guideline § 4B1.1. The probation officer's career offender determination was based on Thompson's related 1976 South Carolina convictions for obtaining drugs by false prescription and pointing a firearm at a person, and on his 1981 South Carolina conviction for felonious distribution of heroin. The presentence report explained that if Thompson was not found to be a career offender, the applicable Guideline imprisonment range would be from 21 to 27 months.

Thompson challenged the presentence report's career offender determination both in a written statement of sentencing factors and at the sentencing hearing. Thompson contended that he did not have two prior convictions for either crimes of violence or controlled substances offenses because neither the false prescription offense nor the pointing a firearm offense for which he had been convicted was either a crime of violence or a controlled substances offense within the meaning of the career offender guideline, Guideline § 4B1.1.

The government responded that the pointing a firearm offense was a crime of violence. The district court agreed and found that Thompson was a career offender. In accord with the recommendation of the probation officer and the plea agreement, the court departed downward from the applicable guideline range because of Thompson's substantial assistance to the government, sentencing him to 132 months' imprisonment, 3 years' supervised release, and a special assessment of $100.00. This appeal followed.[1]

## II

Under the Federal Sentencing Guidelines, a defendant facing sentencing is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of crimes of violence or controlled substances offenses. Guideline § 4B1.1.

Thompson concedes that he was over eighteen years of age on March 16, 1988, the date on which the events giving rise to his federal conviction for possessing and distributing heroin occurred. Thompson concedes that this offense, as well as his 1981 South Carolina conviction for felonious distribution of heroin, are controlled substance offenses within the meaning of the career offender guideline. Thompson contends that the 1976 South Carolina conviction for pointing a firearm at a person was not a crime of violence within the meaning of the career offender guideline and that he was therefore improperly classified as a career offender.

---

1. Thompson appealed his sentence pursuant to 18 U.S.C. § 3742. When Thompson filed his notice of appeal, § 3742(a)(3) limited the right to appeal a sentence in Rule 11(e)(1)(B) plea cases to those instances where the sentence imposed exceeded the sentence recommended in the plea agreement. *See* 18 U.S.C.A. § 3742(a)(3) (West 1985) (superseded). That limitation was subsequently removed. *See* 18 U.S.C.A. § 3742(a), (c) (West Supp.1989).

Because we agree with the government that there is no doubt that Thompson's sentence is appealable under the recently amended § 3742, we need not address whether Thompson could have appealed his sentence under unchanged § 3742(a)(2), which authorizes an appeal if a sentence was imposed as a result of an incorrect application of the Sentencing Guidelines. 18 U.S.C.A. § 3742(a)(2) (West Supp.1989).

### III

For purposes of the career offender guideline, the Sentencing Guidelines incorporate the definition of the term "crime of violence" contained in 18 U.S.C. § 16. Guideline § 4B1.2(1).

Under 18 U.S.C. § 16, a crime of violence is:

(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C.A. § 16 (West Supp.1989). Offenses denominated by 18 U.S.C. § 16(a) may be either misdemeanors or felonies, while those described by § 16(b) must be felonies. S.Rep. No. 225, 98th Cong., 2d Sess. 307, *reprinted in* 1984 U.S.Code Cong. & Ad.News 3182, 3486–87. However, under the express language of Guideline § 4B1.1, the two prior convictions for purposes of career offender classification must be felony convictions. Accordingly, our inquiry is twofold: whether the South Carolina firearm offense is a felony under the career offender guideline and whether this offense is described by either 18 U.S.C. § 16(a) or (b).

█ The South Carolina firearm offense is a felony under the career offender guideline. Application note 3 to Guideline § 4B1.2 states that a "prior felony conviction" is

a prior adult federal or state conviction for an offense punishable by death or imprisonment for a term exceeding one year, regardless of whether such offense is specifically designated as a felony and

regardless of the actual sentence imposed.

Guideline § 4B1.2 application note 3. The South Carolina statute under which Thompson was convicted authorizes imprisonment in the discretion of the court.[2] This offense is punishable by imprisonment for a term exceeding one year and is, therefore, a felony for purposes of the career offender guideline.[3]

█ Thompson and the government advance numerous arguments concerning the applicability of both 18 U.S.C. §§ 16(a) and (b) to the South Carolina firearm offense. We need not determine whether this offense is a crime of violence under 18 U.S.C. § 16(a). Rather, we conclude that the South Carolina firearm offense is a crime of violence under 18 U.S.C. § 16(b) as incorporated by Guideline § 4B1.2(1). Pointing a firearm at a person is an offense "that, by its nature, involves a substantial risk that physical force against the person ... of another may be used in the course of committing the offense." 18 U.S.C.A. § 16(b) (West Supp.1989). This conclusion derives from common sense. It is verified by the reported South Carolina cases involving this offense and by cases from other states concerning analogous firearms offenses.

In each of the reported South Carolina cases, the pointing of a firearm at another person was accompanied by the use of physical force. *State v. Wharton,* 263 S.C. 437, 211 S.E.2d 237 (1975) (defendant slapped the victim and then " 'throwed them two guns up in my face' "); *State v. Poinsett,* 250 S.C. 293, 157 S.E.2d 570 (1967) (defendant pointed and discharged a pistol at the police officers attempting to serve an arrest warrant); *Long v. McMillan,* 226 S.C. 598, 86 S.E.2d 477 (1955) (arrestee entered a service station and fired three shots at one Gary Miller).

---

**2.** The statute reads:

It shall be unlawful for any person to present or point at any other person any loaded or unloaded firearm and, upon conviction therefor, any such person shall be punished by fine or imprisonment, in the discretion of the court. Nothing contained herein shall be

construed to abridge the right of self-defense or to apply to theatricals or like performances. S.C.Code Ann. § 16–23–410 (Law.Co-op 1985).

**3.** Thompson was actually sentenced to a term of imprisonment not to exceed six years.

The likelihood that a pointing a firearm offense will involve the use of physical force is further evidenced by cases from other states with similar firearms statutes. See, e.g., *State v. Reives*, 29 N.C.App. 11, 222 S.E.2d 727 (during the course of a barroom brawl, defendant pulled out a revolver and pointed it at one opponent; when gun did not fire and second opponent grabbed the defendant, defendant mortally shot him in the neck), *cert. denied*, 289 N.C. 728, 224 S.E.2d 675 (1976); *Arizona v. Long*, 121 Ariz. 280, 589 P.2d 1312 (1979) (during an argument at a party, defendant picked up a firearm which discharged in an ensuing struggle; the bullet struck another person in the leg). We recognize that physical force is not always utilized during the course of these offenses. See, e.g., *Kelsoe v. Virginia*, 226 Va. 197, 308 S.E.2d 104 (1983) (Following an argument between defendant and three men, defendant drew a pistol from his coat and pointed it at them. Frightened, the men backed away. The defendant returned the handgun to his coat.). A substantial risk that physical force may be used is, however, invariably present in these cases. This is the determinative factor under 18 U.S.C. § 16(b). It is this substantial risk, coupled with its felony status, that renders the South Carolina pointing a firearm offense a crime of violence for purposes of the career offender guideline.

Thompson seeks to avoid our reaching this conclusion by advancing two classification arguments. Thompson first points out that South Carolina is the only state within the Fourth Circuit that authorizes imprisonment in excess of one year for pointing a firearm.[4] Because South Carolina is the only state within the jurisdiction of this Court in which pointing a firearm constitutes a felony for purpose of career offender status under the Guidelines, Thompson argues that finding this offense to constitute a crime of violence would thwart the Guidelines' goal of uniformity in federal

sentencing. This argument is not persuasive.

■ Thompson does not challenge the Sentencing Commission's definition of a felony as an offense which is punishable by a term of imprisonment in excess of one year. Accordingly, the essence of Thompson's first argument is that, in comparison with other states, South Carolina disproportionately punishes pointing a firearm. Even if this is true, however, a federal court assessing a defendant's criminal history may properly give weight to a state's expression of morals and of policy represented by the severity that state accords to a particular offense for which the defendant was convicted. Federal sentencing need not and should not replace those choices made by states. While uniformity in federal sentencing is an important goal, it does not require that a federal "value" be placed on each and every state offense which falls within the Sentencing Guidelines' definition of a crime of violence.

Thompson also argues that finding that a pointing a firearm offense constitutes a crime of violence would similarly treat disparate offenders, i.e., a defendant with a prior pointing a firearm conviction would be classified the same as a defendant with a prior murder conviction.

If accepted, this argument would render useless 18 U.S.C. § 16(b) as incorporated by the career offender guideline. While pointing a firearm is qualitatively dissimilar from murder, Congress and the Sentencing Commission chose to define a crime of violence as an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another or that, by its nature, involves a substantial risk that physical force against the person or property of another may be used. Merely because physical force is not in fact used during the course of an offense does not make it irrational to equate the seriousness

---

**4.** In North Carolina, imprisonment may not exceed six months for the crime of assault by pointing a firearm. N.C.Gen.Stat. § 14–34 (1986). Virginia authorizes imprisonment not to exceed twelve months for pointing or brand-

ishing a firearm. Va.Code § 18.2–282, 18.2–11 (1982). West Virginia mandates imprisonment of not less than thirty days; not more than ninety days. W.Va.Code § 61–7–10 (1989). Maryland does not have a comparable statute.

of that offense with an offense where force is used and injury inflicted.

Engaging the trigger of a firearm pointed at an individual would likely result in serious harm. Both the individual utilizing a firearm and the person at whom a firearm is pointed would know this. For purposes of deterring or punishing violent crimes, it is not unreasonable or irrational, as Thompson suggests, to treat similarly those individuals previously convicted of crimes involving the actual use of force and those convicted of crimes presenting a substantial risk that force may be used. Pointing a firearm at an individual presents a substantial risk that force may be used.

For the reasons discussed, Thompson's sentence is

AFFIRMED.

PHILLIPS, Circuit Judge, specially concurring:

I agree with the majority opinion's holding that the "pistol-pointing" offense for which defendant was convicted could only be treated as one "of violence" for purposes of federal sentencing by looking to § 16(b). The attempted, threatened or actual use of physical force is not an "element" of the South Carolina offense as defined by statute, hence is not one covered by § 16(a).

I also agree with the result reached by the majority: that the conviction here qualifies under § 16(b). But I disagree with the majority's analysis of why that is so. And because I think that analysis could have unfortunate precedential effects, I concur only in the result for the following reasons.

The majority opinion errs, I think, in believing that to find an offense one which qualifies under § 16(b) for "career offender" purposes, a court must conclude that *any* commission of the offense would "involve[] a substantial risk that physical force ... may be used...." In other words, the majority reads the § 16(b) qualifier, "by its nature," as referring to the *intrinsic* nature of the offense as defined by the relevant sovereign. The majority then proceeds to conclude that the South

Carolina statutory firearm-pointing offense meets this "intrinsic nature" test by a process of reasoning that I cannot accept, relying as it does principally on the unremarkable fact that most, or perhaps all, of the reported appeals from convictions under this statute (and related ones from other states) did involve acts of violence and correspondingly stiff sentences. As I read the South Carolina statute, however, it creates a form of strict liability criminal offense, which allows convictions for everything from horseplay to the most dire form of threat by pistol-pointing. This wide range of possibilities is reflected in the fact that the sentencing range under South Carolina law is apparently unlimited. I don't think that such an offense is one which "by its *intrinsic* nature" would qualify as one "of violence" under § 16(b).

If we had only the statutory text of § 16(b), I would interpret the critical phrase "by its nature" exactly as the majority does—as referring to the *intrinsic* nature of the offense as defined by the relevant sovereign, but would then disagree with the conclusion that the offense here in issue qualified in that sense. But we have more than the text, which admittedly is not unambiguous in the critical respect. The Sentencing Commission's Application Note 1 to Guideline § 4B1.2(1) directs a different reading of "by its nature" in the § 16(b) context. Specifically, it directs a fact-specific inquiry to determine whether a particular prior conviction qualifies under § 16(b). An offense, per the Commission's note, is covered by § 16(b) "only if the *conduct* for which the defendant was *specifically convicted* meets the above definition [that in § 16(b)]" (emphasis added). A clinching illustration is then given in the Note: a conviction for "escape" may or may not be covered by § 16(b), depending upon whether it was done by force or threat of force, or by stealth. *See id.*

The effect of this reading is to refer the phrase "by its nature" to the specific conduct proven rather than to its literal referent, "offense," in the incorporated statute. That reading is certainly not without its

difficulties—both in logic and in practical application. *Cf. United States v. Headspeth,* 852 F.2d 753 (4th Cir.1988) (Maryland "housebreaking" offense cannot be treated under principles of lenity as necessarily a "crime of violence" for purposes of enhancing sentence under 18 U.S.C. § 924(e)). But we presumably owe the Commission the usual deference to agency interpretations of statutes or regulations for whose application the agency has some responsibility, and so I think we must accord deference to this Application Note's interpretation.

On that basis, the analysis here should proceed simply and directly to whether the pistol-pointing "conduct" for which this defendant was "specifically convicted" did "involve a substantial risk, etc." While the majority opinion does not identify that conduct except in the most general sense that it necessarily involved pistol-pointing, the record discloses that it involved pointing it at a pharmacist who declined to accommodate the defendant. *See* Joint Appendix at 55. That conduct would clearly suffice to bring the particular offense under § 16(b); it obviously was not horseplay. The sentence should therefore be upheld on that basis.