918 F.2d 174
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellant,
v.
Muhammed ABDULLAH, a/k/a Jesse Clark, a/k/a Idi Amen Da Da,
Defendant-Appellee.
 No. 90-5156.
 United States Court of Appeals, Fourth Circuit.
 Argued July 20, 1990.
Decided Nov. 16, 1990.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. James C. Cacheris, District Judge. (CR-89-335-A)
 William Graham Otis, Senior Litigation Counsel, Alexandria, Va., for appellant.
 Paul Peter Vangellow, Falls Church, Va., (Argued), for appellee; Henry E. Hudson, United States Attorney, Alexandria, Va., on brief.
 E.D.Va.
 VACATED AND REMANDED.
 Before DONALD RUSSELL, WIDENER and K.K. HALL, Circuit Judges.
 PER CURIAM:
 
 
 1
 The United States appeals the sentence imposed on Muhammed Abdullah upon his conviction for impeding a correctional officer at Lorton Correctional Center, in violation of D.C. Code Sec. 22-505. We vacate the sentence and remand for further development of the record.
 
 I.
 
 2
 Abdullah was charged in a two-count indictment for events which occurred on February 22, 1989, while he was an inmate at Lorton. Count I charged that he "did forcibly assault, resist, oppose, impede, intimidate and interfere with ... a correctional officer" at the prison, in violation of D.C. Code Sec. 22-505(a).[1] Count II charged him with possession of an unauthorized weapon on the same date, to wit, "a shank composed of three (3) metal rods, each sharpened to a point, said shank being capable of causing death or bodily injury," in violation of Code of Virginia Sec. 5301-203(4).[2] A plea agreement was reached in which Abdullah agreed to plead guilty to Count I in return for the government's promise to dismiss Count II. The language of the plea agreement characterized Count I as unlawful "impeding, intimidating and interfering" with a correctional officer. A "Statement of Facts," appended to the agreement and signed by Abdullah and his counsel, provided in part as follows:
 
 
 3
 The defendant MUHAMMED ABDULLAH refused to return to his assigned cell, despite Lieutenant Hinton's repeated orders that ABDULLAH return to his cell. Defendant MUHAMMED ABDULLAH, while holding three shower hooks which had been straightened out and fashioned into rods, jabbed through the tier gate at Lieutenant Hinton. MUHAMMED ABDULLAH did not make physical contact with Lieutenant Hinton. However, Lieutenant Hinton determined that the use of a chemical agent was necessary to subdue the defendant. The actions by MUHAMMED ABDULLAH impeded, intimidated, and interfered with William Hinton in the performance of his legal duties without justifiable cause.
 
 
 4
 The plea agreement itself, also signed by Abdullah and his counsel, states that "the defendant admits that he is in fact guilty of ... the offense ... described in the attached Statement of Facts."
 
 
 5
 The presentence report determined that Abdullah qualified for treatment as a career offender under U.S.S.G. Ch. 4, Pt. B[3] inasmuch as he had previously been convicted of two violent felonies and "the instant offense of conviction is a felony which has as an element the threatened use of physical force against the person of another." U.S.S.G. Sec. 4B1.1. As a career offender, his Guidelines range was calculated as 51-63 months;[4] if Abdullah was found not to qualify under the career offender provisions, his Guidelines range was 8-14 months.[5]
 
 
 6
 Abdullah objected to the 3-point increase for possession and threatened use of a dangerous weapon, contending that "the items possessed by the Defendant were neither dangerous weapons as defined by the Guidelines, nor did Defendant threaten to use them against anyone." He also objected to the report's recommendation of career offender treatment, arguing that the crime to which he pleaded was not a crime of violence under the Guidelines.
 
 
 7
 At the sentencing hearing, Abdullah denied even possessing shower hooks, much less threatening to use them to harm the correctional officer. He argued further that he pleaded only to "impeding an officer" and that his offense is not, under the Guidelines, a crime of violence. The court agreed, adding that "[i]f they [the government] wanted to charge him with a crime of violence, they could have."[6] Accordingly, the court accepted the presentence report's determinations, except for career offender treatment, and sentenced Abdullah to 14 months. In the "Memorandum of Sentencing Hearing and Report of Statement of Reasons," the sentencing judge stated as follows: "The Government argued that the defendant was a career offender. The court found that the conviction in this case was not a crime of violence. The court also decided to enhance the sentencing terms for use of a dangerous weapon." The government appeals.
 
 II.
 
 8
 On appeal, the government contends that the lower court erred in finding that the offense to which Abdullah pleaded was not a "crime of violence" as that term is defined in the Guidelines' career offender provisions. First, the government argues that impeding or interfering with a correctional officer is by its very nature a crime of violence because of the substantial risk that such action might escalate into a violent confrontation between inmates and officers. Alternatively, the government contends that the actual conduct of Abdullah in jabbing at the officer with the sharpened shower hooks, as admitted in the plea agreement, demonstrates conclusively that the conviction qualified Abdullah as a career criminal. We turn first to the career offender provisions in general.
 
 
 9
 The career offender provisions of the Guidelines were intended to assure that certain defendants convicted of past and present drug or violent crimes be sentenced at or near the maximum statutory term. U.S.S.G. Ch.4, Pt.D; 28 U.S.C. Sec. 994(h). The applicability of the career offender provisions to Abdullah hinges on whether the "instant offense of conviction" is a "crime of violence" as the latter term is defined in U.S.S.G. Sec. 4B1.2. The current version of the definitional section, and the version under which Abdullah's case was decided, reads as follows:
 
 
 10
 Sec. 4B1.2. Definitions of Terms Used in Section 4B1.1
 
 
 11
 (1) The term "crime of violence" means any offense under federal or state law punishable by imprisonment for a term exceeding one year that--
 
 
 12
 (i) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
 
 
 13
 (ii) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.
 
 
 14
 U.S.S.G. App.C, amend. 268. The Application Notes to this section include the following explanation:
 
 
 15
 2. "Crime of violence" includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling. Other offenses are included where (A) that offense has as an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the conduct set forth in the count of which the defendant was convicted involved use of explosives or, by its nature, presented a serious potential risk of physical injury to another.
 
 
 16
 Thus, to qualify as a crime of violence under this section, one of the following must be present: (1) force against another (actual, attempted or threatened) must be an element of the offense of conviction; or (2) the offense involves conduct that presents a serious potential risk of injury.[7] Factor (1) presents a pure question of law, whereas the second factor is essentially a factual question.
 
 
 17
 In a case decided under a previous version of the career offender section, two members of a panel of this Court held that the South Carolina statute making it a felony to point a gun at another was intrinsically a crime of violence under U.S.S.G. Sec. 4B1.2(a) (West 1988);[8] United States v. Thompson, 891 F.2d 507 (4th Cir.1989), cert. denied, 110 S.Ct. 1957 (1990). This holding was based on the majority's determination that, regardless of the actual risk of violence presented by the conduct for which Thompson was convicted, "[a] substantial risk that physical force may be used is, however, invariably present in [gun pointing] cases." Id. at 510. In a special concurrence, Judge Phillips opined that the actual conduct of the defendant, rather than the "intrinsic nature of the offense," should be the determining factor. Id. at 511.
 
 
 18
 The statute involved in Thompson made it unlawful to "point at any other person any loaded or unloaded firearm." Id. at 509 n. 2. Despite the minimal risk of injury to another person arising out of the pointing of an unloaded gun, the majority focused on the overall likelihood of the use of force in gun-pointing cases. In other words, if the statute under which a defendant is convicted is "by its nature" the type of offense which involves injury or a threat of injury, then it comes within the ambit of "crime of violence." Because the conduct of the defendant himself is immaterial to this inquiry, the issue is purely one of law. Although the indictment of Abdullah repeated the statutory language almost verbatim, the "Statement of Facts" restricted the offense to mere "impeding, intimidating and interfering with" a correctional officer. It is to this limited range of conduct that we must look in characterizing Abdullah's "offense of conviction."
 
 
 19
 Unlike the single type of conduct proscribed in the South Carolina gun-pointing statute, D.C.Code Sec. 22-505(a) proscribes conduct ranging from assault to mere "impeding an officer." Given this broad spectrum of proscribed conduct, we are unable to say that "the offense has as an element the use ... of physical force." Like the Thompson court, we believe the next step in the inquiry is to determine, as a matter of law, whether the offense "by its nature" involves a "potential risk of injury to another."
 
 
 20
 The government argues that mere refusal of an order inherently presents a serious risk of injury due to the volatility of a prison setting and the potential for escalation of the confrontation between officer and inmate. We decline to expand the concept of "inherent risk" to such a degree. Again, the wide range of criminal conduct encompassed by Sec. 22-505(a) prevents the application of a single rule of law that would apply to all offenses under that statute. Although the district court in the instant case failed to analyze the statute of conviction under the Thompson majority's approach, we do not hesitate in holding that every conviction under D.C.Code Sec. 22-505(a) is not a crime of violence per se under the categorical approach set forth in Thompson; see also United States v. Sherbondy, 865 F.2d 996 (9th Cir.1988). Accordingly, we proceed a step further than the Thompson court and focus on the conduct of Abdullah.
 
 
 21
 The offense, as described in the "Statement of Facts," is divisible into two distinct types of criminal conduct: (1) Abdullah's refusal to return to his cell, and (2) his jabbing through the gate with the straightened shower rods. These two components constitute the single crime of "impeding, intimidating, and interfering with" the correctional officer. The refusal of the order did not involve a risk of harm to another, so our inquiry focuses on the second component of the criminal conduct.
 
 
 22
 The basis for finding a "crime of violence," if there is one at all, will be found in Abdullah's signed admission that he jabbed straightened shower hooks through the tier gate at the officer. At the sentencing hearing, Abdullah attempted to disavow his earlier written admission. The sentencing court apparently refused to accept Abdullah's revised version of the facts, as evidenced by the enhancement of the sentence for possession of a weapon. This enhancement translates into a finding of fact that (1) Abdullah in fact possessed straightened shower hooks; (2) these hooks met the definition of "dangerous weapon" found in U.S.S.G. Sec. 1B1.1, comment (n. 1(d)); and (3) the use of these "weapons" was threatened. U.S.S.G. Sec. 2A2.4(b)(1). It is undisputed, however, that no contact was made with the officer. Moreover, there is no evidence about the possibility of injury to the correctional officer. Abdullah was separated from the officers by a barrier of some sort. Thus, the record does not disclose whether Abdullah had any realistic means of carrying out his alleged threats. Under an "actual conduct" analysis, a finding of a "potential risk of injury" must be premised on a determination that the defendant had the ability to carry out his threats. Therefore, we vacate the sentence and remand for further findings in this regard.[9] If it is determined by the court that "serious potential risk of injury" was present, then the conviction should be deemed a "crime of violence" under U.S.C.G. Sec. 4B1.1.
 
 
 23
 VACATED AND REMANDED.
 
 
 
 [1]
 D.C.Code Sec. 22-505(a) reads in pertinent part as follows:
 Assault on member of police force or fire department.
 (a) Whoever without justifiable and excusable cause, assaults, resists, opposes, impedes, intimidates, or interferes with ... any officer or employee of any penal or correctional institution of the District of Columbia ... while engaged in or on account of the performance of his official duties, shall be fined not more than $5,000 or imprisoned not more than 5 years or both.
 
 
 [2]
 "The United States District Court for the Eastern District of Virginia has original jurisdiction for crimes committed at Lorton Reformatory, which is located within that district, and this includes criminal charges for violation of the D.C.Code and also for violation of Virginia criminal laws assimilated by 18 U.S.C. Sec. 13." United States v. Young, --- F.2d ----, No. 89-5016 (4th Cir. Oct. 12, 1990)
 
 
 [3]
 This Court has recently held that the Sentencing Guidelines are applicable to violations of the D.C.Code committed by Lorton inmates. United States v. Young, --- F.2d ----, No. 89-5016 (4th Cir. Oct. 12, 1990)
 
 
 [4]
 The presentence report mistakenly failed to make the offense level deduction of 2 for acceptance of responsibility for the career offender calculation. Effective November 1, 1989, U.S.S.G. Sec. 4B1.1 was amended to specifically permit such a decrease in career offender situations. U.S.S.G.App.C., Amend. 266. Abdullah was sentenced on December 15, 1989. Thus, the career offender range to which Abdullah would have been subject was 41-51 months (offense level 15, criminal history VI)
 
 
 [5]
 Neither party disputes this figure. To a base offense level of 6 (U.S.S.G. Sec. 2A2.4(a)), 3 was added for the specific offense characteristic of possessing a dangerous weapon and threatening its use (Sec. 2A2.4(b)(1)), and 2 subtracted for acceptance of responsibility (Sec. 3E1.1(a)). The resulting offense level total of 7 and a criminal history category of IV yielded the 8-14 month range (U.S.S.G. Chap. 5, Part A)
 
 
 [6]
 During the sentencing hearing, it was pointed out by Abdullah's counsel that D.C.Code Sec. 22-505(b) provides for up to ten years imprisonment for anyone who "in the commission of any such acts [described in Sec. 22-505(a) ] uses a deadly or dangerous weapon...."
 
 
 [7]
 Another factor covers burglary, arson, extortion, or crimes involving explosives, none of which is arguably present in the instant case. U.S.S.G. Sec. 4B1.2(1)(ii)
 
 
 [8]
 Section 4B1.2(1) incorporated the definition of "crime of violence" contained in 18 U.S.C. Sec. 16. The subsection of this statute under which the Thompson court decided the issue reads in relevant part as follows:
 The term "crime of violence" means--
 (b) any ... offense ... that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.
 
 
 [9]
 Where actual conduct is determinative, the government, as the party seeking career offender treatment, has the burden of showing that Abdullah's conduct qualified under Sec. 4B1.2(1)(ii). See United States v. Urrego-Linares, 879 F.2d 1234, 1238 (4th Cir.), cert. denied, 110 S.Ct. 346 (1989)