STEELMAN, Judge.
Defendant appeals his conviction for robbery with a dangerous weapon. For the reasons discussed herein, we find he received a fair trial free from prejudicial error.
Tywan DeAngelo Parks (Parks), the victim, testified that on 7 November 2002, he arrived at the Playground nightclub at approximately 10:30 p.m. After sitting for "a while," he went to the bathroom, where he saw four or five guys standing by the entrance. Parks bumped into one of the men, who was wearing a tan jacket. The man reached into Parks' pocket. As Parks removed the man's hand from his pocket, the man threw a punch. A second member of the group then threw a punch at Parks. After being hit two orthree times, Parks tried to leave the bathroom. Defendant, clad in a blue hat and jacket, pulled a gun on Parks and told him that "it was [] a hold up[.]" Afraid of the gun, Parks stopped, whereupon he was struck in the head and lost consciousness. Although he thought defendant delivered this blow with the gun, he was not certain.
When Parks came to, he was bleeding from the nose and from a gash on his head and was missing $327.00 in cash, his identification card, gold necklace, wristwatch, and cell phone, which was wrapped with a piece of black electrical tape. When Parks finally left the bathroom, he walked out of the nightclub and into the parking lot. "[S]tanding [at] the corner of the building" were the men who had robbed him, including defendant. Parks approached a police officer and pointed toward his assailants. As the officer approached the men in his patrol car, "they ran around the side of the building." The officer later returned with Parks' cell phone and identification card, which the State introduced into evidence.
Goldsboro Police Officer Bryan Belden testified that Parks approached his patrol car in the Playground parking lot and claimed "that he was robbed at gunpoint in the bathroom and beaten[.]" Parks was "as upset as he could be[,]" his face was bloody, and he was holding a rag or shirt to his head to stop the bleeding. When Parks pointed out the group of four or five men as the robbers, Officer Belden pulled his car toward the corner of the building and radioed for backup. Officer Belden proceeded down Williams Streetto Hooks River Road where he saw defendant walking towards Victor Place. Defendant was wearing a dark colored jacket. Exiting his car, Officer Belden ordered defendant to stop and took him into custody. Upon a search of defendant's person, the officer found Parks' cell phone and identification card, $70.00 in cash, and a second cell phone. Arnold Thorton, Jr. and Anthony Barnes were apprehended by other officers. A fourth suspect eluded capture.
Officer Belden placed defendant in the back seat of his patrol car and drove back to the Playground parking lot, where Parks instantly identified defendant as "the guy that hit me with the gun[.]" Parks further identified his cell phone, noting the tape around the antenna.
Officer Belden read to the jury the written statement he prepared on the night of the incident, which recorded Parks' report "that he was robbed and beaten in the men's room inside the Playground at gunpoint" and Parks' subsequent identification of defendant, his cell phone, and identification card. Officer Belden's report further noted Parks' identification of Thorton as "one of the men that beat and robbed him at gunpoint[,]" and Thorton's possession of $322.00 in cash at the time of his arrest.
Defendant testified on his own behalf and gave his account of the events that occurred on the night of 7 November 2002. Defendant testified that he went to the Playground nightclub with Roderick Ayers. He sat at the bar with Ayers and drank three or four beers. Defendant denied robbing or assaulting Parks in the bathroom and also denied having a gun. Defendant stated that heentered the club with $95.00, and left with $70.00 after spending $25.00 over the course of the evening. He said he found Parks' identification card on top of the bar and decided to keep the card for his personal use, because his own driver's license had been suspended. Defendant further testified that after leaving Ayers at the bar, he walked outside and saw a fight in the parking lot. He asserted that towards the end of the fight, Parks and Barnes exchanged blows before Barnes took off running. He also claimed that as the police were chasing the participants, he spotted two cell phones on the ground and picked them up. When the police told everyone to leave, defendant walked away from the nightclub and was stopped by an officer on Herman Street. Defendant insisted he did not take part in the fight, did not know or speak to any of the people involved, and would not even have thought about fighting.
In rebuttal, the State re-called Officer Belden, who testified that he arrived in the Playground parking lot just as Parks was walking out of the front door, and that defendant was already outside on the sidewalk of the building. Officer Belden saw no one fighting in the parking lot. Upon speaking with Parks, Officer Belden immediately proceeded towards defendant in his patrol car. Defendant was apprehended within two minutes of Parks' report of the robbery.
In defendant's fourth assignment of error he contends the trial court committed error, or plain error, in failing to instruct the jury on common law robbery as a lesser included offense of robbery with a dangerous weapon. Assuming arguendo, that defendantproperly preserved this issue for our review, we find it to have no merit.
The trial court must instruct the jury on any lesser included offense which is supported by the evidence. State v. Kyle, 333 N.C. 687, 703, 430 S.E.2d 412, 421 (1993). Such an instruction is warranted "only where there is evidence that would permit a jury rationally to find a defendant guilty of the lesser offense and acquit him of the greater offense." State v. Barnette, 96 N.C. App. 199, 202, 385 S.E.2d 163, 164 (1989) (citations omitted). The mere possibility that the jury might accept some, but not all, of the State's proffer is insufficient to warrant an instruction on a lesser offense. Id.
Robbery with a dangerous weapon is defined as: "(1) an unlawful taking or an attempt to take personal property from the person or in the presence of another, (2) by use or threatened use of a firearm or other dangerous weapon, (3) whereby the life of a person is endangered or threatened." State v. Call, 349 N.C. 382, 417, 508 S.E.2d 496, 518 (1998) (citing N.C. Gen. Stat. § 14-87). Common law robbery is a lesser included offense of robbery with a dangerous weapon. State v. Frazier, 150 N.C. App. 416, 419, 562 S.E.2d 910, 913 (2002). It is defined as "`the felonious, non-consensual taking of money or personal property from the person or presence of another by means of violence or fear.'" State v. Jones, 339 N.C. 114, 164, 451 S.E.2d 826, 854 (1994), cert. denied, 515 U.S. 1169, 132 L. Ed. 2d 873 (1995) (citations omitted). The difference between robbery with a dangerous weapon and common law robbery is that common law robbery requires the forcible taking of another's property by "the use, or threatened use, of violence[,]" Id., but without "[t]he use or threatened use of a dangerous weapon" required for a conviction of robbery with a dangerous weapon. Frazier, 150 N.C. App. at 419, 562 S.E.2d at 913.
The State presented positive, substantial, and unrebutted evidence of each essential element of robbery with a dangerous weapon. Parks described a robbery in the club's bathroom, during which defendant prevented his escape by brandishing a handgun. Although Parks was uncertain whether the gun was used to deliver the blow which knocked him unconscious, he expressed no uncertainty as to defendant's possession of a gun. Parks' testimony was corroborated by his statement to Officer Belden immediately following the incident that he was robbed at gunpoint in the bathroom, and by his identification of defendant at the scene as "the guy that hit me with the gun[.]" Absent any evidence to the contrary that the object drawn by defendant in the club's bathroom was a gun, "there is a mandatory presumption that the weapon was as it appeared to the victim to be[,]" a gun. State v. Allen, 317 N.C. 119, 124, 343 S.E.2d 893, 897 (1986). Moreover, nothing else appearing, a handgun is a "dangerous weapon" for purposes of N.C. Gen. Stat. § 14-87. State v. Reives, 29 N.C. App. 11, 12, 222 S.E.2d 727, 728 (1976) (noting "[a] pistol is a deadly weapon per se")).
Defendant's evidence did not support a jury finding that he committed the offense of common law robbery. Defendant testifiedthat he did not commit the robbery. Even taken as true, this account has no tendency to show defendant forcibly took the property from Parks by force or the threat of force. Since there was no evidence which would support an instruction on the lesser included offense of common law robbery, the trial court did not err in failing to give such an instruction. See State v. Poole, 154 N.C. App. 419, 424, 572 S.E.2d 433, 437 (2002), cert. denied, 356 N.C. 689, 578 S.E.2d 589 (2003).
In his fifth assignment of error, defendant assigns plain error to the trial court's failure to instruct the jury on the lesser included offense of misdemeanor larceny. See N.C.R. App. P. 10(c)(4). While conceding he made no request for this instruction at trial, as required by N.C.R. App. P. 10(b)(2), defendant insists the court's decision to instruct on only the charged offense "tied the jurors' hands and mandated a conviction" thereon.
When a defendant assigns plain error to the trial court's failure to instruct the jury on a lesser included offense, he "must convince this Court that there was error and that absent the error, the jury probably would have reached a different verdict." State v. Thomas, 350 N.C. 315, 348, 514 S.E.2d 486, 506, cert. denied, 528 U.S. 1006, 145 L. Ed. 2d 388 (1999). Defendant has failed to meet this burden. Other than claiming the court's instructions tied the jury's hands and was manifestly unfair, defendant has made no attempt to articulate the plain error standard of review or to present a meaningful argument for relief under that standard. "[B]y simply relying on the words `plain error' as the extent ofhis argument in support of plain error, defendant has effectively failed to argue plain error and has thereby waived appellate review." See State v. Wiley, 355 N.C. 592, 624, 565 S.E.2d 22, 44 (2002), cert. denied, 537 U.S. 1117, 154 L. Ed. 2d 795 (2003).
In defendant's second assignment of error he contends the trial court committed plain error in admitting evidence that he exercised his right to remain silent following his arrest. The following allusion to defendant's post-arrest silence appeared in Officer Belden's written report of the incident, which he read to the jury:
Both [defendant and Thorton] were transported to the Goldsboro Police Department where they were read their rights. Both men, Mr. Thorton and [defendant], declined to answer any questions or make a statement. A third man was arrested in connection with the armed robbery . . . . His name is Anthony Lamont Barnes. Mr. Barnes was also read his rights and he declined to answer any questions or make a statement.
Defendant concedes he offered no objection to Officer Belden's report at trial.
"[T]he exercise of [a defendant's] constitutionally protected rights to remain silent and to request counsel during interrogation may not be introduced as evidence against [him] by the State at trial." State v. Bishop, 346 N.C. 365, 385, 488 S.E.2d 769, 779 (1997). Where the defendant, as is the case here, fails to object at trial, he "has the burden of showing that the error constituted plain error, that is, (i) that a different result probably would have been reached but for the error or (ii) that the error was so fundamental as to result in a miscarriage of justice or denial ofa fair trial."
Id.
We find defendant has failed to meet his burden. Officer Belden's single reference to defendant's silence was imbedded within a lengthy written report in which the officer also noted the silence of two other suspects. The prosecutor made no inquiry into or comment upon defendant's post-arrest silence. In light of the substantial evidence of defendant's guilt as recited above, Officer Belden's brief mention of defendant's post-arrest silence did not deprive him of his right to a fair trial. See id.; State v. Elmore, 337 N.C. 789, 792, 448 S.E.2d 501, 502-03 (1994).
The record contains two additional assignments of error not addressed by defendant in his appellant's brief. Pursuant to Rule 28(b)(6) of the Rules of Appellate Procedure, they are deemed abandoned.
NO ERROR.
Judges HUNTER and ELMORE concur.
Report per Rule 30(e).