**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Alvin James PIERCE, Defendant–**
**Appellant.**

No. 00–4701.

United States Court of Appeals,
Fourth Circuit.

Argued Sept. 28, 2001.

Decided Jan. 10, 2002.

**ARGUED:** Eric A. Bach, Charlotte, North Carolina, for Appellant. C. Nicks Williams, Assistant United States Attorney, Charlotte, North Carolina, for Appellee. **ON BRIEF:** Robert J. Conrad, Jr., United States Attorney, Charlotte, North Carolina, for Appellee.

Before WILKINS, NIEMEYER, and GREGORY, Circuit Judges.

Affirmed by published opinion. Judge NIEMEYER wrote the majority opinion, in which Judge WILKINS joined. Judge GREGORY wrote a dissenting opinion.

## OPINION

NIEMEYER, Circuit Judge.

We are presented with the single issue of whether Alvin Pierce's prior conviction for taking indecent liberties with a child, in violation of N.C. Gen.Stat. § 14–202.1, constitutes a predicate "crime of violence" for purposes of enhancing his sentence in the instant case as a "career offender" under the Sentencing Guidelines, U.S.S.G. § 4B1.1. Applying a categorical approach to the determination of career-offender status, we conclude as a matter of law that the state felony offense of taking indecent liberties with a child constitutes a crime of violence under U.S.S.G. § 4B1.1 both because it amounts to a forcible sex offense and because it creates a serious potential risk of physical injury. Accordingly, we affirm the district court's sentence of Pierce as a career offender.

## I

On April 21, 1999, Alvin Pierce robbed a branch of the Branch Banking & Trust in Charlotte, North Carolina; on July 30, 1999, Pierce robbed a branch of the Wachovia Bank in Charlotte; and on August 11, 1999, Pierce robbed a branch of Central Carolina Bank in Charlotte. After being indicted for bank robbery and bank larceny in connection with each incident, in violation of 18 U.S.C. §§ 2113(a) and 2113(b), Pierce pleaded guilty to three counts of bank robbery. The district court sentenced Pierce as a career offender under U.S.S.G. § 4B1.1 and imposed a 188 month term of imprisonment for each count of conviction, to be served concurrently.

In sentencing Pierce as a career offender, the district court relied on two prior felony convictions, one in 1995 for bank robbery, in violation of 18 U.S.C. § 2113(a), for which he was sentenced to 57 months' imprisonment; and one in 1992 for taking indecent liberties with a child, in violation of N.C. Gen.Stat. § 14–202.1, for which he was sentenced to five years' imprisonment. Although Pierce did not object to the district court's use of the bank robbery conviction as a predicate offense for finding career-offender status, he did object to use of the indecent liberties conviction, arguing that the offense did not constitute a "crime of violence" as required by U.S.S.G. § 4B1.1.

In concluding that the indecent liberties offense did indeed constitute a crime of violence, the district court "specifically . . . noted that the particular incident involved a young seven year old daughter of [Pierce's] girlfriend." When defense counsel noted that the age of the victim was not stated in the charging document, the court

accepted into evidence a 1992 memorandum from the Greensboro Parole Services Department prepared in connection with the case. That report noted that the victim was seven-and-one-half years old at the time of the crime and described the crime as follows:

> The victim stated that this defendant made her watch dirty movies. She stated that he made her touch his penis and that he had fondled her genital area. The child was examined by a doctor and there had been no penetration evident, but the vaginal area was irritated. The victim also stated that this had happened on numerous occasions when her mother was away from the home and that this had begun at age six. The victim, when examined by a doctor, tested positive for Chlamydia, which is a sexually transmitted disease.

Pierce objected to the district court's use of the parole services report because it violated the categorical approach mandated for considering predicate offenses.

In addition, Pierce took the witness stand and testified on his own behalf, denying that he took any indecent liberties with the child. He stated that the charge was "concocted" as the result of a custodial dispute and clarified that the child was his seven-year old daughter.

From the district court's judgment, Pierce noticed this appeal raising only the issue of whether the district court erred in finding that his prior conviction for indecent liberties with a child was a crime of violence for the purpose of applying career-offender status. He argues that under the categorical approach, the court should not have considered facts not contained in the charging document and that the charging document itself only alleges, in statutory language, a violation of N.C. Gen.Stat. § 14–202.1. He asserts that, because the statutory language does not re-

quire physical force or touching, the offense is not a crime of violence.

## II

Section 994(h) of Title 28 directs that the United States Sentencing Commission provide sentences "at or near the maximum" for defendants convicted of crimes of violence or drug crimes if those defendants have also twice previously been convicted for crimes of violence or drug crimes. Section 4B1.1 of the Sentencing Guidelines, which implements Congress' directive, thus enhances sentences for defendants who are "career offenders." This section defines a "career offender" as any defendant who (1) is at least 18 years old at the time he commits the instant offense; (2) is convicted of a felony that is either a crime of violence or a drug offense; and (3) has at least two prior felony convictions of either a crime of violence or a drug offense. U.S.S.G. § 4B1.1. A defendant found to be a career offender under § 4B1.1 is sentenced at a criminal history Category VI and at specified minimum offense levels. *Id.*

As used in § 4B1.1, "crime of violence" means any offense, whether federal or state, punishable by imprisonment for a term exceeding one year that

> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a). The relevant application notes amplify the definition, stating that crimes of violence include "murder, manslaughter, kidnaping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit,

and burglary of a dwelling," as well as any offense that, "by its nature, present[s] a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2, cmt. n. 1. Even though the question of whether an offense is a crime of violence is a question of *federal* law, because the federal law includes the possibility that a predicate offense may be a prior violation of state law, *see* U.S.S.G. § 4B1.1(a), in considering such an offense, we look to *state* law to determine its nature and whether its violation is a crime of violence under federal law.

The question presented in this case, therefore, is whether the North Carolina felony offense of taking indecent liberties with a child falls within the federal definition of a crime of violence because it is either a "forcible sex offense" or an offense which, "by its nature, presents a serious potential risk of physical injury to another." This is a question of law that we review *de novo*. *United States v. Dickerson*, 77 F.3d 774, 775 (4th Cir.1996).

In answering this question, we use the required categorical approach, which takes into account only the definition of the offense and the fact of conviction. *United States v. Kirksey*, 138 F.3d 120, 124 (4th Cir.1998); *United States v. Wilson*, 951 F.2d 586, 588 (4th Cir.1991). The principles for application of this approach were adopted from the analogous analysis prescribed in *Taylor v. United States*, 495 U.S. 575, 588–90, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), in which the Supreme Court applied the same categorical approach to determine whether burglary was a predicate crime of violence for armed-career-offender status under 18 U.S.C. § 924(e). *See Kirksey*, 138 F.3d at 124. In *Kirksey*, we pointed out that neither Congress nor the Sentencing Commission intended, by relying on predicate offenses in § 4B1.1, to open up the predicate offenses for retrial or reconsideration. *See id.* If we were to go behind the fact of conviction and attempt to determine the facts of each predicate offense, sentencing would become a series of minitrials for each prior offense, which would be both costly and unreliable.

When the definition of the predicate offense is ambiguous and does not reveal whether it is a crime of violence, we may discover the nature of the offense for which the defendant was actually convicted by looking at the charging document and the jury instructions. *See Kirksey*, 138 F.3d at 124. But in permitting this, we have admonished that the inquiry must never "involve[ ] a factual inquiry into the facts previously presented and tried." *Id.* at 124–25.

In the case before us, the district court relied upon the parole services report that was contained in the record but was not included in the charging document to point out that the victim was seven years old. Pierce correctly notes, however, that this use of the parole services report was improper. Use of parole services reports or other noncharging documents could lead to the very factual inquiry that the categorical approach prohibits. Indeed, this case presents a relevant example. The report consulted by the district court provided details about how Pierce was alleged to have engaged in a sexual act with a seven year old girl by touching her and having her touch him. Yet, in his sworn testimony before the district court, Pierce denied engaging in that conduct and asserted, to the contrary, that the charge was drummed up by his girlfriend in retaliation for disputing the young girl's custody. The sentencing proceeding in this case could never have been the appropriate forum for the resolution of that factual dispute. Thus, under the categorical approach in *Kirksey*, the district

court should not have relied on any such facts taken from the case file or the testimony of witnesses. Rather, it should have approached the question of whether the offense of taking indecent liberties with a child was categorically a crime of violence, as defined by the Sentencing Guidelines.

While we could look to the charging document and the contents of jury instructions, the charging document in this case adds no facts to the statutory elements alleged and there were no jury instructions because Pierce pleaded guilty. Therefore, we are left with analyzing the nature of the offense itself. Because the offense under consideration was a state offense, we look to state law to understand whether a conviction under state law amounts to a crime of violence as defined by federal law.

Pierce was convicted for violation of N.C. Gen.Stat. § 14–202.1, which makes taking indecent liberties with children a felony. That statute provides in relevant part:

A person is guilty of taking indecent liberties with children if, being 16 years of age or more and at least five years older than the child in question, he either:

(1) Willfully takes or attempts to take any immoral, improper, or indecent liberties with any child of either sex under the age of 16 years for the purpose of arousing or gratifying sexual desire; or

(2) Willfully commits or attempts to commit any lewd or lascivious act upon or with the body or any part or member of the body of any child of either sex under the age of 16 years.

N.C. Gen.Stat. § 14–202.1(a).

■ The North Carolina courts have stated that § 14–202.1 was enacted to protect children. *See State v. Elam,* 302 N.C. 157, 273 S.E.2d 661, 665 (1981) (noting the purpose as "the protection of children from the sexual advances of adults"); *Matter of State v. Turman,* 52 N.C.App. 376, 278 S.E.2d 574, 575 (1981) (stating, "[t]he purpose of the statute is to give broader protection to children than the prior laws provided"); *see also State v. Etheridge,* 319 N.C. 34, 352 S.E.2d 673, 682 (1987) (noting that the broad range of prohibited indecent conduct gives children broader protection than available under other statutes proscribing sex acts). The North Carolina Supreme Court explained that the provision "clearly prohibits sexual conduct with a minor child. Indeed, the legislature enacted § 14–202.1 to encompass more types of deviant behavior, giving children broader protection than available under other statutes proscribing sexual acts." *State v. Banks,* 322 N.C. 753, 370 S.E.2d 398, 406 (1988) (internal citations and quotation marks omitted). "The evil the legislature sought to prevent in this context was the defendant's performance of any immoral, improper, or indecent act in the presence of a child 'for the purpose of arousing or gratifying sexual desire.'" *State v. Hartness,* 326 N.C. 561, 391 S.E.2d 177, 180 (1990) (quoting N.C. Gen. Stat. § 14–202.1). Consistent with this broad protection, the North Carolina statute requires neither physical force nor a touching. *E.g., Hartness,* 391 S.E.2d at 180; *Etheridge,* 352 S.E.2d at 682. As the Supreme Court explained in *Banks,*

Undoubtedly [the statute's] breadth is in recognition of the significantly greater risk of psychological damage to an impressionable child from overt sexual acts. We also bear in mind the enhanced power and control that adults, even strangers, may exercise over children who are outside the protection of home or school.

*Banks,* 370 S.E.2d at 407 (quoting *State v. Hicks,* 79 N.C.App. 599, 339 S.E.2d 806, 809 (1986)).

Pierce argues that "[s]ince physical touching is not a required element of the offense, indecent liberties is not a crime of violence." He also points out accurately that the charging document provides no facts demonstrating that physical touching was involved.

The government argues in response that under U.S.S.G. § 4B1.1, neither force nor a touching is a necessary aspect of a "crime of violence," directing our attention to the portion of its definition that includes any crime which, *"by its nature,* present[s] a serious *potential* risk of physical injury to another." U.S.S.G. § 4B1.2, cmt. n. 1 (emphasis added); *see also* U.S.S.G. § 4B1.2(a)(2) (defining crime of violence to include any offense "that presents a serious potential risk of physical injury to another").

Following the contours of the categorical approach set out by the Supreme Court in *Taylor* and by this court in *Kirksey,* we use a "general approach," applying "uniform, categorical definitions to capture all offenses of a certain level of seriousness that involve violence or an inherent risk thereof, and that are likely to be committed by career offenders, regardless of technical definitions and labels under state law." *Taylor,* 495 U.S. at 590, 110 S.Ct. 2143; *see also Kirksey,* 138 F.3d at 124 (limiting inquiry to fact of conviction and definition of the offense). Accordingly, this court must examine the offense as a *category* of criminal conduct defined by the statute and not "the particular facts underlying those convictions." *Taylor,* 495 U.S. at 600, 601, 110 S.Ct. 2143.

Thus, when examining the indecent liberties statute involved in this case, which has been defined repeatedly by the North Carolina Supreme Court, we recognize first that the statute was enacted to provide broad protection against sexual abuse, a particularly pernicious form of personal injury, of the most vulnerable members of our society. As the North Carolina courts have observed, the statute is written in broad terms as part of its specific design to protect against the heightened risk of injury that comes when impressionable children are the victims. *See Banks,* 370 S.E.2d at 407 (recognizing the "significantly greater risk" of injury to children from "overt sexual acts"). By emphasizing the breadth of protection provided by § 14-202.1, these courts have indicated that injury can be caused even in the absence of touching or explicit force.

Relying on the breadth of the North Carolina statute, our dissenting colleague maintains that a conviction under the North Carolina indecent liberties statute is not a conviction for a crime of violence. He rests his position on the propositions that (1) the language of the North Carolina statute is so broad that it criminalizes conduct beyond that which presents a serious risk of physical injury, and (2) the statute may be violated in a "vast array of means" that poses no risk of physical injury. This position, however, fails on two accounts.

First, the Sentencing Guidelines provide a broad definition of a crime of violence, aiming at a crime that not only causes physical injury but also a crime that, by its nature, *could* cause physical injury. Thus, the Guidelines expressly list arson and burglary of a dwelling as crimes of violence. *See* U.S.S.G. § 4B1.2, cmt. n. 1. Yet neither arson nor burglary of a dwelling categorically has as an element any touching or physical harm to a person. Indeed, a person need not even be threatened in such offenses. In a similar vein, we have held that a crime of violence includes: the crime of attempted breaking and entering of a dwelling, *see United States v. Custis,* 988 F.2d 1355, 1364 (4th Cir.1993); the crime of escape from custo-

dy, *see United States v. Hairston*, 71 F.3d 115, 118 (4th Cir.1995); and the crime of attempted escape, *see United States v. Dickerson*, 77 F.3d 774, 777 (4th Cir.1996). Again, none of these crimes requires a touching or even an actual threat of physical injury. What is common to all of these crimes, as well as to the North Carolina indecent liberties statute, however, is conduct that inherently presents a risk of physical injury. Indeed, it is for this reason that the Sentencing Guidelines themselves classify criminal sexual abuse under 18 U.S.C. § 2242 as a crime of violence, even though, as we explain more fully below, a violation does not require a touching or physical injury. *See* U.S.S.G. § 2A3.1, cmt. background.

Second, our dissenting colleague's position is inconsistent with available empirical data relating to the application of the North Carolina indecent liberties statute. In most instances, convictions under this statute have involved offenses committed in close proximity to victims so as to create a serious risk of physical injury. A review of North Carolina appellate decisions since 1980 that apply the indecent liberties statute reveals that in 98% of the cases, the crime is committed in situations where the victim is in such close proximity to the perpetrator that the victim was exposed to the serious risk of injury.* We have held that in determining whether a particular offense, which may be committed in both violent and nonviolent ways, is a crime of

violence, "most" of the instances of the offense should present a serious risk of physical injury in order to be a crime of violence. *See United States v. Martin*, 215 F.3d 470, 475 (4th Cir.2000); *cf. United States v. Johnson*, 246 F.3d 330, 334 (4th Cir.2001) (noting that when "most instances" do not present a risk of physical injury, the offense is not a crime of violence).

▮ Thus, because the North Carolina indecent liberties statute protects against the risk of physical injury and its violation therefore presents a serious risk of physical injury, such a violation categorically is a crime of violence.

We come to this same conclusion also because the North Carolina statute protects against a "forcible sex offense," which the Sentencing Guidelines also define to be a crime of violence. U.S.S.G. § 4B1.2, cmt. n. 1. The North Carolina courts have consistently held that constructive force may be inferred in sexual abuse cases involving children. *See, e.g., Etheridge*, 352 S.E.2d at 680–81. The North Carolina Supreme Court has noted that "constructive force may be demonstrated by evidence of threats or other actions by the defendant which compel the victim's submission to sexual acts, and such threats 'need not be explicit so long as the totality of the circumstances allows a reasonable inference that such compulsion was the unspoken purpose of the threat.'" *North Carolina v. Penland*, 343

---

* For the period from 1980, 150 reported decisions were found where (1) the facts were stated in sufficient detail to indicate whether the victim and the perpetrator were in close proximity, (2) the opinion did not specify that the defendant violated § 14–202.1(a)(2) rather than § 14–202.1(a)(1) (which does not require physical contact), and (3) the case did not reverse for insufficiency of evidence. Of these 150 cases, only 3 did not meet the criteria: *State v. Nesbitt*, 133 N.C.App. 420,

515 S.E.2d 503, 505–06 (1999) (masturbation while watching children play outside, 35 feet away); *State v. McClees*, 108 N.C.App. 648, 424 S.E.2d 687, 690 (N.C.Ct.App.1993) (videotaping victim without victim's knowledge); and *State v. Strickland*, 77 N.C.App. 454, 335 S.E.2d 74, 75–76 (1985) (masturbation while watching boys play across a creek). In the remaining 147 cases, the convictions involved offenses committed in such close proximity to the victim as to present a serious risk of physical injury.

N.C. 634, 472 S.E.2d 734, 742 (1996) (quoting *Etheridge*, 352 S.E.2d at 680); *accord North Carolina v. Brown*, 332 N.C. 262, 420 S.E.2d 147, 150 (1992). In this case, the adult-child relationship between the defendant and the victim permits the inference of constructive force. *See Etheridge*, 352 S.E.2d at 681 ("We hold that constructive force could be reasonably inferred from the circumstances surrounding the parent-child relationship"); *North Carolina v. Hardy*, 104 N.C.App. 226, 409 S.E.2d 96, 99 (1991) (same). "The youth and vulnerability of children, coupled with the power inherent in a parent's position of authority, creates a unique situation of dominance and control in which explicit threats and displays of force are not necessary to effect the abuser's purpose." *Etheridge*, 352 S.E.2d at 681.

It would thus appear that North Carolina's indecent liberties statute, as interpreted by the North Carolina courts, protects not only against the serious risk of physical injury but also against the application of constructive force created by the nature of the relationship of adult and child. Either aspect would satisfy the Sentencing Guidelines' definition of a "crime of violence."

North Carolina's own take on the indecent liberties statute which Pierce violated is similar to the Sentencing Guideline's take on an analogous federal law of sexual abuse. Sections 2241 and 2242 of Title 18 prohibit aggravated sexual abuse and sexual abuse, respectively, and § 2242 provides for punishment of persons who engage in sexual acts with other persons if the other person is "incapable of appraising the nature of the conduct" or "physically incapable of declining participation in, or communicating unwillingness to engage in, that sexual act." 18 U.S.C. § 2242. The statute also prohibits *attempts* to engage in sexual acts with persons incapable of appraising the act or communicating an unwillingness to participate. *Id.* The Sentencing Guidelines applicable to these two sections state categorically that, even though a touching or physical injury is not a required element of a violation of § 2242, "[s]exual offenses addressed in this section *are crimes of violence. Because of their dangerousness, attempts are treated the same as completed acts of criminal sexual abuse.*" U.S.S.G. § 2A3.1, cmt. background (emphasis added). This commentary also provides that "[a]ny criminal sexual abuse with a child less than twelve years of age, regardless of 'consent,' is governed by § 2A3.1 (Criminal Sexual Abuse)." *Id.* And any criminal sexual abuse is defined as crime of violence. *Id.* Similarly, a violation of 18 U.S.C. § 2243, which prohibits sexual abuse (or attempt) with a minor or ward, is characterized as a crime of violence by the Sentencing Guidelines as long as the victim has not attained the age of 12, regardless of any purported consent. *See* U.S.S.G. § 2A3.2 cmt. background.

Accordingly, whether we look at North Carolina's characterization of its indecent liberties statute which Pierce violated, or the federal characterization of an analogous federal law, the conclusion is the same that taking indecent liberties with a minor amounts to a crime of violence under U.S.S.G. § 4B1.1 because the offense involves "forcible sex" or "by its nature, presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2, cmt. n. 1. When a child is the victim of adult conduct, force can be inferred. Moreover, even if force and any resulting injury were not inferred, such child abuse by an adult would present a serious *potential* risk of physical injury to the child, a danger that is quite similar in character to the *potential* injury to persons involved in arson or burglary, both of which are specifically recognized as crimes of violence.

The injury that sex abuse of children offers is not only a serious potential risk, but it is the very risk at which the North Carolina statute prohibiting indecent liberties with children is aimed. Consequently, we conclude that a violation of that statute is categorically a crime of violence.

In reaching this conclusion, we join every other circuit that has considered the question, even though the underlying factual circumstances in those cases involved either a sexual touching or a statute that required a sexual touching. *See United States v. Meader,* 118 F.3d 876, 885 (1st Cir.1997) (holding that statutory rape offense was a crime of violence for career offender purposes); *United States v. Kirk,* 111 F.3d 390, 395–96 (5th Cir.1997) (holding that conviction of indecency with a child involving sexual contact is a crime of violence); *United States v. Shannon,* 110 F.3d 382, 389 (7th Cir.1997) (en banc) (holding that second degree sexual assault of a child, requiring sexual contact, is a crime of violence); *United States v. Taylor,* 98 F.3d 768, 773 (3d Cir.1996) (holding that statutory rape conviction for which facts supported allegation of use of physical force, was a crime of violence); *United States v. Passi,* 62 F.3d 1278, 1282 (10th Cir.1995) (holding that sexual abuse of a minor involving contact is a crime of violence for purposes of calculation of offense level); *United States v. Wood,* 52 F.3d 272, 277 (9th Cir.1995) (holding that conviction under indecent liberties statute, where criminal information included facts that victim was five years old and sexual contact occurred, was crime of violence); *United States v. Bauer,* 990 F.2d 373, 375 (8th Cir.1993) (holding that statutory rape offense was a crime of violence). But the violence in each of these cases was not necessarily the touching—as the touching itself may not cause injury—but rather it was either a "forcible sex offense" or an offense that, "by its nature, presents a serious potential risk of physical injury to another."

Accordingly, the judgment of the district court is

*AFFIRMED.*

GREGORY, Circuit Judge, dissenting:

Fidelity to the text of the Sentencing Guidelines together with respect for our precedent requires me to conclude that North Carolina's offense of indecent liberties is not a "crime of violence" under USSG § 4B1.1. Simply put, the defendant lacked one of the necessary predicate offenses that would warrant a sentencing enhancement as a "career offender" under USSG § 4B1.1. First, North Carolina's definition of taking indecent liberties with a child is broad, encompassing much conduct that does not, by its nature, present a serious risk of physical injury to another. Second, the offense cannot be classified as a "forcible sex offense" because the use, attempted use, or threatened use of physical force is not an element of the offense. The majority has abandoned the approach we routinely employ in interpreting § 4B1.1, and its definitional section, § 4B1.2. In doing so, the majority misapplies Supreme Court instruction and ignores binding Circuit precedent. I must respectfully dissent.

The majority correctly recognizes that we are required to use a "categorical approach," and correctly states that this approach prohibits us from taking into account the parole services report or the defendant's testimony. We may only consider the definition of the offense and information contained in the charging documents. The majority also correctly recognizes that the indictment involved in

this case merely repeats the language of § 14–202.1(a)(1) of the statute.[1]

## I.

## A.

This Court has repeatedly addressed the issue of whether a particular crime is a "crime of violence" under the "otherwise clause" of § 4B1.2. Our limited inquiry requires that

> in assessing whether a particular offense satisfies the "otherwise clause" of [USSG § 4B1.2(a)(2)], a sentencing court must confine its factual inquiry to those facts charged in the indictment. If the sentencing court cannot glean the circumstances surrounding the defendant's commission of the crime from the indictment, the question for the sentencing court becomes whether that crime, *in the abstract*, involves conduct that presents a serious potential risk of physical injury to another.

*United States v. Dickerson*, 77 F.3d 774, 776 (4th Cir.1996) (internal quotation marks & citations omitted) (emphasis added); *United States v. Martin*, 215 F.3d 470, 473 (4th Cir.2000) (quoting *Dickerson*).

The commentary to the guidelines indicates the same approach. In explaining how the "otherwise clause" should be applied, the commentary states that "[o]ther offenses are included as 'crimes of violence' if ... the conduct set forth (*i.e.,* expressly charged) in the count of which the defendant was convicted involved the use of explosives (including any explosive material or destructive device) or, by its nature, presented a serious potential risk of physical injury to another." USSG § 4B1.2, cmt. n. 1. The commentary also states that in determining whether a particular offense is a crime of violence, "the offense of conviction (*i.e.,* the conduct of which the defendant was convicted) is the focus of the inquiry." USSG § 4B1.2, cmt. n. 2.

From this, it should be readily apparent that the relevant inquiry is whether the *conduct* presents a serious risk of physical injury *by its nature*, not whether the legislature was motivated by a desire to reduce the risk of injury when it enacted the prohibition. We do not look at the "aims" or "purposes" of the statute, except to the extent they shed light on the range of conduct prohibited by the offense. If we are unaware of the conduct of the specific offender, we endeavor to understand whether a serious potential risk of physical injury is inherent in the range of conduct prohibited by the offense. Using the language of our prior cases, we ask whether the offense presents a serious risk "in the abstract."[2] Using the language of the sentencing guidelines, we ask whether the offense "by its nature" presents such a risk. The majority's approach, in contrast, reduces to an argument that North Carolina's indecent liberties statute is a crime of violence because its purpose is to protect children from the harms of sexual abuse.

On numerous occasions, we have found offenses to present a serious potential risk of physical injury because of the substantial risk of physical confrontation during the commission of the crime. For example, in *United States v. Custis*, 988 F.2d 1355 (4th Cir.1993), we held that attempt-

---

1. The majority's description of the alleged events that led to the defendant's guilty plea to taking indecent liberties with a child is unnecessary.

2. *See also United States v. Thompson*, 891 F.2d 507, 511 (4th Cir.1989) (Phillips, J., concurring) (stating that the phrase "by its nature" has been interpreted as referring to "the intrinsic nature of the offense....").

ed breaking and entering of a dwelling constitutes a violent felony because of the substantial risk of confrontation. *Id.* at 1363–64 ("In most cases, attempted breaking and entering will be charged when a defendant has been interrupted in the course of illegally entering a home. Interrupting an intruder while breaking into a home involves a risk of confrontation nearly as great as finding him inside the house."). Similarly, in *United States v. Hairston,* 71 F.3d 115, 118 (4th Cir.1995), we held that escape from custody is a violent felony because "the chance that [even] in the case of an escape by stealth, the escapee will be intentionally or unintentionally interrupted by another" created the possibility that "the escapee [will] choose to dispel the interference by means of physical force." *See also Dickerson,* 77 F.3d at 777 (relying on *Hairston* in holding that attempted escape from custody is a crime of violence); *United States v. Aragon,* 983 F.2d 1306, 1311–15 (4th Cir.1993) (holding that attempting to rescue a prisoner or assisting his escape is a crime of violence for purposes of 18 U.S.C.A. § 1952(a)(2) (West Supp.2000)); *United States v. Mobley,* 40 F.3d 688, 696 (4th Cir.1994) (holding that pickpocketing is a violent felony because of the likelihood of confrontation).

On another recent occasion, we looked at the instrumentality of the offense to determine whether it presented a serious risk of physical injury. In *United States v. Johnson,* 246 F.3d 330 (4th Cir.2001), we held that the offense of knowing possession of a sawed-off shotgun presented a serious risk of physical injury and was thus a crime of violence. We did so because the *type* of weapon involved created a serious risk of physical injury. *Id.* at 334 ("The crime involved in this case requires the court to consider whether the possession of a certain *type* of weapon creates a serious risk of physical injury to another."). A sawed-

off shotgun is inherently dangerous and lacks usefulness except for purposes which would cause physical injury. *Id.* at 334; *see also United States v. Brazeau,* 237 F.3d 842, 845 (7th Cir.2001) (holding possession of sawed-off shotgun always presents a serious potential risk of physical injury); *United States v. Allegree,* 175 F.3d 648, 651 (8th Cir.), *cert. denied,* 528 U.S. 958, 120 S.Ct. 388, 145 L.Ed.2d 303 (1999) (same); *United States v. Fortes,* 141 F.3d 1, 6–8 (1st Cir.1998) (same); *United States v. Hayes,* 7 F.3d 144, 145 (9th Cir. 1993) (same). And in *United States v. Thompson,* 891 F.2d 507, 510 (4th Cir. 1989), we held that the South Carolina offense of pointing a firearm at another person qualified as a violent crime for purposes of "career offender" status because of the substantial risk of physical force that is "invariably present" in that offense. In each of these cases, we looked at the intrinsic circumstances of the offense and determined that a serious risk of physical injury was present.

In contrast, when the generic conduct involved in a particular offense does not carry with it a serious risk of physical injury, we have held that the offense is not a crime of violence under § 4B1.2(a)(2). In *United States v. Johnson,* 953 F.2d 110 (4th Cir.1992), we held that the offense of possession of a firearm by a convicted felon is not a crime of violence. We contrasted the case with *Thompson,* noting that *Thompson* involved the *pointing* of a firearm, and stated that "simple possession of a firearm by a felon does not present the same immediate threat...." *Id.* at 115. We then reasoned that "[t]he danger inherent in the mere possession of a firearm is, in many cases, too highly attenuated to qualify the offense as a *per se* 'crime of violence.'" *Id.* We noted the broad range of conduct prohibited by the offense, and

found that it foreclosed a finding that the offense was a crime of violence. *Id.*

In *Johnson,* we noted that the facts demonstrated why many instances of the offense would not present a serious risk of injury. *Id.* The guns possessed by the defendant were buried in his backyard. *Id.* We stated that "[a]ny 'serious potential risk of physical injury to another' depends upon a speculative chain of events in which [the offender] recovers the guns and then brandishes them in the presence of another person. Such violent conduct may often underlie a charge of gun possession, but it is not a necessary element of that offense." *Id.*

Finally, we were unswayed by the status of the offender as a felon. "While a felon in possession of a firearm may pose a statistical danger to society, we refuse to interpret this statistical threat as evidence of specific intent on the part of an individual defendant." *Id.*

We have also held that the offense of bank larceny is not a crime of violence. *United States v. Martin,* 215 F.3d 470, 475 (4th Cir.2000). In *Martin,* our critical analysis was that "[a]lthough some bank larcenies may present a risk of physical confrontation, bank larceny may be committed by numerous means that present no such risk.... The vast array of means of committing bank larceny that pose no potential risk of physical injury to another, let alone a serious one, precludes a determination that the offense in the abstract is a crime of violence." *Id.*

Based on these precedents, I must conclude that North Carolina's offense of taking indecent liberties with a child is not a crime of violence. As the majority correctly notes, the range of conduct prohibited by the statute is extremely broad. *See*

*ante* at 286. The North Carolina Supreme Court has repeatedly held that "the legislature enacted § 14–202.1 to encompass more types of deviant behavior, giving children broader protection than available under other statutes proscribing sexual acts." *State v. Banks,* 322 N.C. 753, 370 S.E.2d 398, 406 (1988); *State v. Etheridge,* 319 N.C. 34, 352 S.E.2d 673, 682 (1987) (same); *Matter of State v. Turman,* 52 N.C.App. 376, 278 S.E.2d 574, 575 (1981) (same). The facts to which the statute has been applied confirm the breadth of its coverage. For example, in *State v. McClees,* 108 N.C.App. 648, 424 S.E.2d 687 (1993), the Court of Appeals of North Carolina affirmed the conviction of a man who secretly videotaped a female high school student undressing. Until informed by the police, the victim was unaware that she had been videotaped. *Id.* at 688. And in *State v. Strickland,* 77 N.C.App. 454, 335 S.E.2d 74 (1985), the court upheld the conviction of a man who masturbated within sight of two boys who were some sixty feet away, and invited them to join him. These cases demonstrate that the generic conduct reached by the offense is not limited to circumstances with a serious inherent risk of physical injury.

By enacting such a broad statute, North Carolina may have accomplished its purpose of giving maximum protection to children, but it also prohibited more conduct than that which presents a serious risk of physical injury. As in *Martin*'s analysis of bank larceny, the repeated interpretations of North Carolina's statute indicate that there are a "vast array of means of committing" indecent liberties with a child "that pose no potential risk of physical injury to another, let alone a serious one." [3] *Martin,* 215 F.3d at 475. Whether

---

**3.** Also relevant is *United States v. Brandon,* 247 F.3d 186, 193 (4th Cir.2001), in which we

held that the offense of possessing between twenty-eight and two hundred grams of co-

a particular instance of conduct presents a serious risk of injury is ultimately a matter of degree—or the attenuation of the risk. In making the determination, we must attempt to measure the likelihood that the prohibited conduct will result in violence. Here, I do not think North Carolina's offense qualifies.[4] "A court must ... tread carefully when interpreting the 'otherwise' clause. Conjecture or speculation about possible harm is not sufficient to create a crime of violence under § 4B1.2; instead, there must be evidence that the crime, by its nature, presents a substantial risk or an affirmative indication in the indictment or information that the defendant engaged in conduct presenting a serious risk of physical injury." *Martin*, 215 F.3d at 475 (quoting *United States v. Rutherford*, 54 F.3d 370, 375 (7th Cir.1995)).

Under North Carolina law, the offender's purpose for committing the act (to sexually gratify himself), and the requirement that the act be committed "with" (which includes presence and constructive presence) a child are the important elements of the offense.[5] "The evil the legis-

lature sought to prevent in this context was the defendant's performance of any immoral, improper, or indecent act in the presence of a child 'for the purpose of arousing or gratifying sexual desire.' Defendant's purpose for committing such act is the gravamen of this offense; the particular act performed is immaterial." *State v. Hartness*, 326 N.C. 561, 391 S.E.2d 177, 180 (1990) (quoting N.C. Gen.Stat. § 14–202.1). Thus, the offense turns almost entirely on the age of the victim and the purpose of the offender. The potential impact of the offending act on the child, although no doubt a motivating factor in the enactment of the statute, plays no part in corralling the expanse of impermissible conduct.[6]

The majority relies on the status of the offender vis-a-vis the victim in holding that the offense is a crime of violence. The government also stresses the relationship of the offender to the victim, stating that "the risk of violence is implicit in size, age and authority position of the adult in dealing with a young and helpless child."[7]

caine is not a "serious drug offense" under 18 U.S.C. § 924(e) because "typical conduct reached" by the offense does not inherently involve intent to manufacture or distribute, as required for sentencing enhancement. Section 924(e) cases are useful in considering cases under § 4B1.1. *Brandon*, 247 F.3d at 193 n. 3; *Martin*, 215 F.3d at 474 n. 2; *Unites States v. Kirksey*, 138 F.3d 120, 124 (4th Cir.1998).

4. The majority attempts to sidestep the numerous ways that this statute can be violated without risk of violence by emphasizing that the guideline refers to a serious *potential* risk of physical injury. U.S.S.G. § 4B1.2(a). The word "potential" is a redundancy in the guideline. *United States v. Shannon*, 110 F.3d 382, 385 (7th Cir.1997) (en banc) ("A 'risk' is by definition probable not certain, hence potential rather than actual; 'potential risk' appears to be a redundancy in the guideline.").

5. Additionally, there is no requirement that the act performed be an "unnatural act" such

that could be considered inherently abusive regardless of the status of the offender and victim. *Hartness*, 391 S.E.2d at 180.

6. To make a fairly obvious additional point, North Carolina may be particularly risk-averse, wanting to punish any conduct which has the remotest chance of causing injury to a child or leading to further conduct which has a chance of causing injury. *See Shannon*, 110 F.3d at 386 (stating "that a serious risk of physical injury cannot be automatically inferred from the existence of a statutory-rape law" because some states may be more or less risk-averse than others). That is a laudable goal, but it does not make the offense a crime of violence.

7. The majority cites cases that note the position of authority a parent holds with respect to a child. To the extent the majority is relying on the fact that the offender in this case is the parent of the victim, it strays beyond the required categorical approach.

Appellees Br. at 8. I do not disagree that the age difference—and the accompanying size and authority differences—provides a legitimate reason to criminalize all the conduct covered by the statute. But it is not a reason, in the absence of some aggravating factor, to find that the offense presents a serious risk of physical injury to another. The nature of the relationship between offender and victim in this sexualized context may pose a "statistical danger to society" (like felons in possession of guns) but any serious risk of physical injury in many cases covered by the statute will "depend[ ] upon a speculative chain of events" in which the offender decides to engage in conduct putting the child at risk. Again, in many cases covered by the statute, the offender's intent and conduct will stop well short of creating a serious risk of physical injury. "The danger inherent in the [offense] is, in many cases, too highly attenuated to qualify the offense as a *per se* 'crime of violence.'" *Johnson*, 953 F.2d at 115.

Attempting to turn a fatal weakness into a strength, the majority relies on the purpose of North Carolina's statute to provide broad protection to children and to prevent injury. As should be clear, however, our precedents require us to focus on the intrinsic nature of the conduct prohibited, and require us to make an independent judgment about whether that conduct presents a serious risk of physical injury. *Martin*, 215 F.3d at 475; *Johnson*, 953 F.2d at 115; *Custis*, 988 F.2d at 1363–64; *Hairston*, 71 F.3d at 118. We cannot simply acknowledge the truth that many forms of sexual abuse lead to physical injury, accept that reducing this risk was the purpose of the statute, and conclude that the offense, by its nature, presents a serious risk of physical injury. Not even North Carolina has made the leap required for the latter conclusion (and, if North Carolina had, it would be inappropriate for us to defer to it). We must look at the range of conduct encompassed by the statute. A statutory purpose to prevent injury is simply not enough unless it has been translated into a statutory prohibition coextensive with that purpose.[8] Here, the indecent liberties statute was written to prohibit acts falling beyond those that present a serious risk of injury.[9]

In addition, the majority notes the adult-child relationship between the offender and the victim. Again, this is not permitted under the appropriate analysis. All that the North Carolina statute requires is that the offender be at least 16 years of age, and at least five years older than the victim. The victim must be under 16 years of age. N.C. Gen.Stat. § 14–202.1(a). Thus, the offender could be 20 years old, and the victim 15 years old. Or the offender could be 16 years old, and the victim 11 years old. Thus, the offense could involve conduct by offenders who could not be considered adults, or could involve victims who are approaching the outer years of their immaturity.

8. It should come as no surprise that the conduct prohibited by a statute is sometimes a broader range of conduct than a particular purpose might justify. *Cf. Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 79, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) ("[S]tatutory prohibitions often go beyond the principal evil to cover reasonably comparable evils, and it is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed.").

9. If the statutory purpose of reducing the risk of physical injury were sufficient to make an offense a "crime of violence," at least one of our cases, *United States v. Johnson*, 953 F.2d 110 (4th Cir.1992), would have come out the other way. I have no doubt that one of the primary purposes of prohibiting felons from possessing firearms is to reduce the risk of injury to others. There is certainly adequate evidence, in the form of recidivism rates, to show that felons are substantially more likely than non-felons to use guns in a violent manner. But in *Johnson* we found that the offense was not a crime of violence. *Id.* at 115.

### B.

In looking to North Carolina's motivation for enacting the statute, the majority also improperly defers to state law to interpret § 4B1.2. *See ante* (noting that indecent liberties statute has been "defined repeatedly by the North Carolina Supreme Court" and "was enacted to provide broad protection against sexual abuse . . . ."); *id.* ("As the North Carolina courts have observed, the statute is written in broad terms as part of its specific design to protect against the heightened risk of injury that comes when impressionable children are the victims."); *id.* ("By emphasizing the breadth of protection provided by § 14–202.1, these courts have indicated that injury can be caused even in the absence of touching or explicit force."); *id.* (injury of sex abuse "is the very risk at which the North Carolina statute prohibiting indecent liberties with children is aimed"). I consider this approach to be foreclosed by the Supreme Court's decision in *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). In *Taylor*, the Court was faced with determining the meaning of the word "burglary" as it was used in 18 U.S.C. § 924(e)(2)(B)(ii). Section 924(e)(2)(B)(ii), a sentencing enhancement, employs a definition of "crime of violence" virtually identical to § 4B1.2, including any offense that is "burglary, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious risk of physical injury to another." The Eighth Circuit held that the word "burglary" in § 924(e)(2)(B)(ii) meant " 'burglary' however a state chooses to define it." *Taylor*, 495 U.S. at 579, 110 S.Ct. 2143. The Supreme Court vacated the sentence, stating that Congress had adopted a "general approach, in designating predicate offenses, of using uniform, categorical definitions to capture all offenses of a certain level of seriousness that involve violence or an in-

herent risk thereof, and that are likely to be committed by career offenders, regardless of technical definitions and labels under state law." 495 U.S. at 590, 110 S.Ct. 2143. The Court went on to state:

> It seems to us to be implausible that Congress intended the meaning of "burglary" for purposes of § 924(e) to depend on the definition adopted by the State of conviction. That would mean that a person convicted of unlawful possession of a firearm would, or would not, receive a sentence enhancement based on exactly the same conduct, depending on whether the State of his prior conviction happened to call that conduct "burglary."

*Id.* at 590–91, 110 S.Ct. 2143. In the present case, the majority makes a similar error. In *Taylor*, the lower court made the sentencing enhancement dependent on technical definitions and labels under state law. Here, the majority makes the sentencing enhancement dependent on the state's asserted aim or purpose for enacting the statute. Either way, the application of the sentencing enhancement becomes improperly dependent upon state law. *See id.*; *Dickerson v. New Banner Institute, Inc.*, 460 U.S. 103, 119–20, 103 S.Ct. 986, 74 L.Ed.2d 845 (1983) (holding that absent plain indication to the contrary, federal law should not be interpreted so that its application is dependent on state law); *United States v. Turley*, 352 U.S. 407, 411, 77 S.Ct. 397, 1 L.Ed.2d 430 (1957) (same). If another state enacted the very same law, and then stated (or left its courts' statements uncorrected) that the purpose of the law was to protect the virtue of children, irrespective of any risk of physical injury, would the majority then say that the offense, considered in the abstract, was not a crime of violence? Presumably so. The contradiction of *Taylor* is apparent. The offense would, or

would not, be a crime of violence depending on how the state characterized the offense. *Cf. Shannon*, 110 F.3d at 387, 389 (noting that original purpose of statutes protecting against sexual contact was to protect virginity and marriage ability of female minors and noting that statutory rape is often thought of as a "morals offense"). The only difference between this case and *Taylor* is that the majority's approach in this case has the added disadvantage of requiring courts to search out the often elusive purposes of the relevant state law. At least in *Taylor*, the court of appeals rendered federal law dependent on the *text* of state law.[10]

Rather than making the "career offender" enhancement dependent on state law, the majority should have answered the question, as a matter of federal law, whether the offense intrinsically involved conduct presenting a serious risk of physical injury. As discussed above, this question must be answered in the negative. *See also Brandon*, 247 F.3d at 195 (finding it impermissible under *Taylor* to rely on state's designation of possession of drugs as involving distribution for purposes of § 924(e) sentencing enhancement).

## II.

The majority also holds that the taking of an indecent liberty with a child is a "forcible sex offense." I cannot agree.

As an initial matter, I note that the phrase "forcible sex offense" does not appear in the guideline; rather, it appears in the commentary to the guideline. USSG § 4B1.2, cmt. n. 1. The offense at issue cannot be a "forcible sex offense" that would qualify as a crime of violence unless it is covered by one of the two alternatives in the guideline definition. For reasons discussed above, the offense does not qualify under the "otherwise clause." That leaves the portion of the definition that makes a crime of violence an offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another...." *Id.* § 4B1.2(a)(1). It seems logical that this is the prong under which the majority is operating to conduct its "forcible sex offense" analysis.

The majority finds that the offense is a "forcible sex offense" because "North Carolina courts have consistently held that constructive force may be inferred in sexual abuse cases involving children." First, as discussed above, *Taylor* precludes making the phrase "forcible sex offense" dependent on state law. Second (and perhaps more importantly), North Carolina's indecent liberties statute does not require any force, constructive or otherwise. It only requires an indecent liberty in the presence of a child—and constructive presence suffices. *Hartness*, 391 S.E.2d at 180–81. Each of the cases cited by the

---

**10.** The majority states that in considering whether a state law offense is a crime of violence, "we look to *state* law to determine its nature and whether its violation is a crime of violence under federal law." Similarly, the majority states that "we look to state law to understand whether a conviction under state law amounts to a crime of violence as defined by federal law." These statements obscure what has heretofore been a substantially more nuanced approach. We are, of course, bound by the state's definition of its own offense. We have no business in refusing to acknowl-

edge the plain language of the indecent liberties statute, or with the authoritative construction placed on it by the state's highest court. But the ultimate legal conclusion of whether the state offense "amounts to" a crime of violence is an issue of *federal* law. *See Taylor*, 495 U.S. at 590–91, 110 S.Ct. 2143. Here, resolving that issue will turn on whether the state offense presents a serious risk of physical injury. To say—as the majority does—that that question can be answered by state law is to refuse to acknowledge its federal character.

majority deal with an entirely different North Carolina statute, which requires a sexual act "by force and against the will of the other person." N.C. Gen.Stat. § 14–27.5(a). I simply do not understand how North Carolina's recognition of constructive force in interpreting an entirely different statute helps the majority reach the conclusion that taking indecent liberties with a child is a "forcible sex offense."

11. Despite the majority's statement to the contrary, *ante* at 289, none of the cases it cites held that the offense was a crime of violence because it was a "forcible sex offense."

12. In *Meader*, 118 F.3d at 884, it was apparent from the definition of the offense and the charging papers that the conduct involved sexual intercourse between a thirteen-year old girl and a man three times her age. I agree that such conduct, by its nature, presents a serious risk of physical injury. In *Kirk*, 111 F.3d at 395, the court took into account (perhaps erroneously) the fact that the victim was an eight-year old boy who had been lured into a secluded area and sexually abused. The abuse included physical contact. Again, I have no problem with this holding. As the Fifth Circuit stated: "[W]hen children are physically inferior to and trusting of adults, a potentially dangerous situation exists. Anytime an eight-year old child is molested by an adult there is a significant risk that physical injury will result. When one couples a mature adult's inherent authority over a helpless young child with the implicit threat that his superior physical strength poses, the risk of physical injury is clear and unequivocal." *Id.* at 395. It is the threat of force that creates the risk of injury. The threat of force exists, in turn, because of the offender's desire to sexually touch the child. I also note that in *Kirk*, the court specifically declined to decide whether sexual indecency with a child not involving sexual contact was a crime of violence. *Id.* at 396. In *Shannon*, the Seventh Circuit held that sexual intercourse with a thirteen-year old victim was a crime of violence. The court specifically relied on the disease and fertility risks of intercourse, and injuries stemming from unwanted pregnancy. *Id.* at 387–88. Chief Judge Posner's opinion for the majority contains an extended discus-

## III.

Finally, the majority attempts to buttress its conclusion by stating that it "join[s] every other circuit that has considered the question...." No other circuit, however, has considered the question presented here.[11] Nor has any other circuit employed the reasoning the majority uses here.[12] The majority acknowledges that in each of these prior cases, the offense re-

sion of that circuit's mode of deciding whether a particular offense is a crime of violence, but a single quote is sufficient to demonstrate that *Shannon* does not support the majority here: "An inference of violence from a mere unconsented-to physical contact, the government's first reason for arguing that every felonious sexual act with a minor is per se a crime of violence, would not wash in this circuit." *Id.* at 385. From this, it is clear enough that *Shannon* does not support the proposition that any sexual activity with a minor not even involving the victim's awareness, much less contact, is a crime of violence. The court did rely on the age of the victim, but only in regards to its reasoning that the risk of injury from sexual intercourse goes up as the age of victim goes down. *Shannon* is absolutely dependent on facts not presented here. In *United States v. Taylor*, 98 F.3d 768, 772–73 (3d Cir.1996), the indictment alleged that the offender "forced [the victim] onto her bed and while holding her down opened his trousers and pulled out his penis...." *Id.* at 772. The physical force used in *Taylor* obviously presented a risk of injury. In *United States v. Passi*, 62 F.3d 1278, 1282 (10th Cir.1995), the court relied on its previous reasoning that "when an older person attempts to sexually touch a child under the age of fourteen, there is always a substantial risk that physical force will be used to ensure the child's compliance." Again, this differs from the situation where there is no risk of forced compliance because the offender has no desire to physically touch or even approach his victim. *United States v. Wood*, 52 F.3d 272, 277 (9th Cir.1995), is the same as *Passi*. The offense involved sexual contact with a four-year old girl, and the court relied on "the substantial risk that physical force will be used to ensure the child's compliance." *Wood*, 52 F.3d at 275 (quoting *Passi*). Finally, in *United States v. Bauer*, 990

quired—at a minimum—a sexual touching. The majority deems this irrelevant, however, stating that the touching may not cause the injury. It is, of course, true that sexual contact may not cause injury, but the majority misses the relevance of the contact. Sexual contact was important in the cited cases because it created circumstances where the risk of physical injury was present in the categorical definition of the offense. As several courts have reasoned, sexual contact with a child may be enough to qualify the offense as a crime of violence because of the "substantial risk that physical force will be used to ensure the child's compliance." *Passi*, 62 F.3d at 1282. Sexual contact is not *necessary* to finding a risk of injury, it is merely one possible circumstance out of many which increases the risk of injury. The majority offers nothing else in North Carolina's indecent liberties offense that presents a similar risk of injury.[13] Because of the breadth of the statute, I do not think such circumstances are inherent in the offense. While North Carolina's intent may be to protect minors from the risk of injury, they have chosen to effect this intent in a broad manner, including criminalizing con-

F.2d 373 (8th Cir.1993), the court, without extensive discussion, held that statutory rape was a crime of violence. It appears that the court relied on the risk that physical force might be used to engage in the offense. In all of these cases, the offense conduct intrinsically involved a serious risk of physical injury.

**13.** The majority compares North Carolina's indecent liberties offense with arson and burglary, both of which are specifically identified as crimes of violence, and points out that neither of these offenses has an element of touching, threatened touching, or physical harm. The majority apparently understands my argument to be that an offense is a crime of violence only if one of these elements is present. It is not. The majority confuses what is necessary with what is sufficient. Arson and burglary both involve conduct that

duct which does not present a serious risk of physical injury to another.

## IV.

The majority points to 18 U.S.C. §§ 2241 and 2242 as comparable to North Carolina's indecent liberties offense, but they are not comparable. These statutes prohibit certain forcible sexual acts, nonconsensual sexual acts, and sexual acts with children under 12 years of age. The commentary to the relevant sentencing guideline classifies the offenses as crimes of violence. USSG § 2A3.1, cmt. background. These offenses all involve conduct which presents a greater risk of injury than North Carolina's indecent liberties offense. First, both offenses require "sexual acts" or attempted "sexual acts." A "sexual act" is defined as

(A) contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight;

(B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;

inherently possess a serious risk of injury. As for burglary, the offense has an "inherent potential for harm to persons" because "[t]he fact that an offender enters a building to commit a crime often creates the possibility of a violent confrontation between the offender and an occupant, caretaker, or some other person who comes to investigate." *Taylor*, 495 U.S. at 588, 110 S.Ct. 2143. As for arson, it presents the risk of physical injury for the obvious reason that it involves the use of fire. That neither crime requires touching or physical harm is beside the point. The majority says that burglary, arson, and North Carolina's indecent liberties offense all inherently present a serious risk of injury, but never tells us why they all inherently present a risk sufficiently proximate to—or not "attenuated" from—actual injury to pass muster under our caselaw.

(C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or

(D) the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.....

18 U.S.C. § 2246(2). Second, both offenses require some aggravating factor that would indicate an increased likelihood of injury—either force, threatened force, placing the victim in fear, physical inability of the victim to consent, inability of the victim to apprise the nature of the conduct, or conduct involving a child of less than 12 years of age.

North Carolina's indecent liberties statute, in contrast, does not even require attempted contact. Nor does it require any of the same aggravating factors, punishing both conduct of which the victim is unaware and otherwise consensual conduct with a child under 16. Consequently, there is substantially less risk of injury.

Much more closely analogous federal statutes are 18 U.S.C. §§ 2243(a) and 2244. Section 2243(a) still has the performance of a "sexual act" as an element, but applies to minor victims up to 16 years of age. Section 2244 only requires "sexual contact,"[14] but also requires the aggravating factors of § 2241 or § 2242. North Carolina's indecent liberties offense, therefore, is much more similar to (although still less risky than) §§ 2243 and 2244

offenses than §§ 2241 and 2242 offenses. And yet the relevant guidelines for §§ 2243 and 2244 do *not* preemptively state that those offenses are crimes of violence. *See* USSG §§ 2A3.2, 2A3.4. Because more analogous federal crimes are not preemptively deemed by the guidelines to be crimes of violence, the majority's reliance on §§ 2241 and 2242 is not persuasive.

The majority also states that if an offense may be committed in both violent and non-violent ways, it is a crime of violence if "most" of the instances of the offense present a serious risk of physical injury. The majority further states that this was the holding of *Martin*. The majority is wrong on both fronts. With respect to our precedent, we had no occasion in *Martin* to address the question of whether every instance of an offense had to present a serious risk of physical injury in order for that offense to qualify as a crime of violence. Our statement that "most, if not all, instances of an offense" should present a serious risk of physical injury in order for the sentencing enhancement to apply was merely another way of expressing the specific holding of that case, viz., that bank larceny is not a crime of violence because of the "numerous" ways the offense could be committed without a serious risk of injury. *Martin*, 215 F.3d at 475. I interpret "most, if not all" to mean "at least most, and maybe all." In other words, the question remained open after *Martin*. The majority's statement that the offense is a crime of violence if "most" of the instances of the offense present a serious risk of injury is a non sequitur.

14. Sexual contact is defined as "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(3).

In order for an offense to present a serious risk of injury *by its nature,* the generic conduct of the offense must always present that high level of risk. That is what "by its nature" means. We have also used the adjectives "inherent," "intrinsic," and "per se" to describe the risk of injury required under the § 4B1.2. I cannot think of any clearer way of conveying that the defining conduct of the offense must present the risk if the offense is to be considered a crime of violence.

Finally, I am not persuaded by the majority's statistics. First, the majority does not tell us how many of the cases in which the opinion specified that the defendant violated § 14–202.1(a)(1), the subsection that applied to Pierce, was the offense committed in close proximity to the victim.

Second, using these statistics as the majority does is not in keeping with the holdings of *Martin* and *Dickerson,* which demand that we consider the offense in the abstract. *Dickerson,* 77 F.3d at 776; *Martin,* 215 F.3d at 473. The majority fails to satisfactorily relate its statistics to this ultimate inquiry of the nature of the offense. Notwithstanding the majority's numbers, there are a multitude of ways this offense can, and may have been, committed without resulting in prosecution or a conviction, much less a reported decision with information sufficient for the majority to include it in its statistics. *Martin,* 215 F.3d at 473. Convictions are merely a reflection of the realities of enforcement. It may well be that prosecutors in North Carolina agree that many instances of the offense create a low risk of injury, and that it is not worth expending scarce resources in enforcing the statute in these cases. In addition, many of the low risk occurrences of the offense may be difficult to detect. But whether the State foregoes prosecution, or is simply unable to detect the violation, the conduct is covered by the statute. The majority's data speaks only to convictions under the statute, not the inherent nature of the myriad of ways the statute can be violated. Given these flaws, the majority's empirical data is not compelling.

### V.

The taking of indecent liberties with a child is reprehensible. But such conduct does not permit us to take liberties with the sentencing guidelines. I respectfully dissent.