PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
  *Plaintiff-Appellant,*

v.                                               No. 04-4088

RICHARD DANIEL ALLEN,
  *Defendant-Appellee.*

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Andre M. Davis, District Judge.
(CR-03-113-AMD)

Argued: May 25, 2006

Decided: June 14, 2006

Before WILLIAMS and MICHAEL, Circuit Judges,
and HAMILTON, Senior Circuit Judge.

Vacated and remanded by published opinion. Senior Judge Hamilton
wrote the opinion, in which Judge Williams and Judge Michael
joined.

## COUNSEL

**ARGUED:** Christopher John Romano, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellant. Denise Charlotte Barrett, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Baltimore, Maryland, for Appellee. **ON BRIEF:**

Thomas M. DiBiagio, United States Attorney, Baltimore, Maryland, for Appellant. James Wyda, Federal Public Defender, Baltimore, Maryland, for Appellee.

---

**OPINION**

HAMILTON, Senior Circuit Judge:

The government appeals the sixty-three month sentence imposed by the district court following the guilty plea of the defendant, Richard Allen, to the charge of being a felon in possession of a firearm, 18 U.S.C. § 922(g). For the reasons stated below, we vacate Allen's sentence and remand for resentencing.

I

On November 26, 2002, members of the Baltimore Police Department's Criminal Investigations Division, Drug Enforcement Section, went to Allen's residence located at 1618 East Fort Avenue, Baltimore, Maryland, in order to execute an arrest warrant for Allen, who was charged by a Maryland state indictment with various felony narcotics violations. The officers were met by Allen's girlfriend, who informed the officers that Allen was upstairs. Prior to attempting to arrest Allen, the officers, for safety reasons, asked Allen's girlfriend if there were any firearms located in the house. She told the officers that there was a handgun located in "our" bedroom, underneath a pillow. The officers observed a Ruger P-95 nine millimeter semi-automatic pistol protruding from under a pillow in the couple's bedroom. Allen was subsequently located hiding in a closet and placed under arrest. At this point, the residence was secured by the officers and a search warrant was sought for the residence. A search of the residence resulted in the recovery of the Ruger P-95 (loaded with nine rounds of ammunition) and a box of nine millimeter ammunition containing thirty-seven cartridges. Further investigation revealed that the firearm and ammunition had been purchased in a sporting goods store in Glen Burnie, Maryland by Allen and his girlfriend.

On March 5, 2003, a federal grand jury sitting in the District of Maryland indicted Allen on three counts of violating § 922(g). By

way of a plea agreement drafted by the government, Allen agreed to plead guilty to the § 922(g) count charging him with possession of the Ruger P-95. The plea agreement provided that, in the event Allen was found to be an Armed Career Criminal under 18 U.S.C. § 924(e), he was subject to a "minimum mandatory sentence of fifteen (15) years without parole and up to life imprisonment without parole." The plea agreement further provided that, if the government determined that Allen had provided substantial assistance to the government, the government would make a one level downward departure motion pursuant to USSG § 5K1.1. In the plea agreement, Allen reserved the right to seek departures based on duress and his criminal history category over-representing his criminal history. Finally, both Allen and the government waived their right to appeal the sentence imposed, reserving only the right to appeal departures from the sentencing range under the Guidelines or a sentence that was imposed above the statutory maximum or below the statutory minimum.

The presentence report (PSR) prepared for Allen's sentencing determined that Allen was an Armed Career Criminal, based on three prior felony drug convictions.[1] Because Allen was determined to be an Armed Career Criminal, the PSR indicated that Allen's statutory mandatory minimum sentence was fifteen years. The PSR also found that Allen's criminal history category was VI, based on a total of thirteen criminal history points.[2] Although the PSR correctly determined that Allen's adjusted offense level was 30 (after an acceptance of responsibility reduction), it mistakenly ignored the statutory mandatory minimum sentence and reported that Allen's sentencing range

---

[1]Allen does not dispute that he is an Armed Career Criminal.

[2]Allen's thirteen criminal history points were calculated as follows: (1) three for a Maryland state possession with intent to distribute offense which took place on July 18, 1994; (2) three for a Maryland state possession with intent to distribute offense which took place on September 23, 1994; (3) three for two Maryland state manufacture/distribution offenses which took place on September 3, 1995; (4) one for a Maryland state driving with a suspended license offense which took place on June 19, 2001; (5) one for a Maryland state driving with a revoked license offense which took place on February 25, 2002; and (6) two because the current § 922(g) offense was committed while Allen was on probation for the driving offenses.

was 168 to 210 months, when it should have reported that the range was 180 to 210 months. *See* USSG § 5G1.1(c).

On January 9, 2004, Allen appeared for sentencing. Consistent with the terms of the plea agreement, the government moved for a one level downward departure under § 5K1.1, which would have placed Allen's sentencing range at 151 to 188 months (offense level 29, criminal history category VI). Of note, the government *did not* move for a downward departure under 18 U.S.C. § 3553(e). Allen argued for a further departure based on his substantial assistance, his criminal history category over-representing his criminal history, and the duress that allegedly made him commit the § 922(g) violation.[3]

After hearing argument from counsel, the district court reduced Allen's criminal history category from VI to IV, based on the finding that Allen's criminal history category over-represented his criminal history. The court also departed from the PSR's recommended offense level of 30 to offense level 22, which, at a criminal history category of IV, produced a sentencing range of 63 to 78 months. For the eight level departure, the court relied on Allen's substantial assistance to the government and the fact that duress drove Allen to commit the § 922(g) violation. However, the court explicitly refused to "make a specific finding as to the eight levels[,] how many of those are 5K1.1 and how many of those are on the duress ground." Allen was sentenced to sixty-three months' imprisonment.

II

On appeal, the government argues that the district court erred when it departed below the sentencing range of 151 to 188 months (offense level 29, criminal history category VI), which was the range recommended by the government following its one level downward depar-

---

[3]The factual basis of Allen's duress argument is as follows. Sometime in May 2002, two armed gunmen in the middle of the night broke into the apartment that Allen shared with his girlfriend. The gunmen chased Allen through the apartment and held a gun to Allen's girlfriend's head. The gunmen stole $5,000 in drug proceeds. Fearful of another attack, Allen and his girlfriend moved. They purchased the Ruger P-95 for their protection and kept it under a pillow in their bed.

ture motion under § 5K1.1 of the Guidelines. According to the government, a departure based on duress was not warranted because the alleged duress did not involve a threat of physical injury resulting from the unlawful act of a third party. *See* USSG § 5K2.12 ("Ordinarily, coercion will be sufficiently serious to warrant departure only when it involves a threat of physical injury . . . resulting from the unlawful action of a third party or from a natural emergency."). The government further posits that Allen's extensive criminal history did not warrant a departure based on his criminal history category over-representing his criminal history. We agree with the government that Allen's sentence must be vacated, albeit for different reasons.

Allen pled guilty to a § 922(g) offense. Because Allen had three prior felony convictions for serious drug offenses, a fact he does not contest before this court, he faced a statutory mandatory minimum sentence of fifteen years under 18 U.S.C. § 924(e). Because the statutory mandatory minimum sentence was fifteen years, the district court was not permitted to sentence Allen below fifteen years unless 18 U.S.C. §§ 3553(e) or (f) permitted the court to do so. Section 3553(f), better known as the "safety valve exception," clearly does not apply here because, among other things, Allen's § 922(g) offense involved a firearm. That leaves us with the question of whether § 3553(e) allowed the court to sentence Allen below the statutory mandatory minimum sentence.

Section 3553(e) provides that, "[u]pon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as a minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense." 18 U.S.C. § 3553(e). Section 5K1.1 of the Guidelines provides that, "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines." USSG § 5K1.1.

In *Melendez v. United States*, 518 U.S. 120 (1996), the Supreme Court analyzed the relationship between § 3553(e) and § 5K1.1. Specifically, the Court addressed the question of whether a government motion made under § 5K1.1 vested the district court with authority to

depart below the statutory mandatory minimum sentence for the charged offense. In holding that it did not, the Court explained that

> nothing in § 3553(e) suggests that a district court has power to impose a sentence below the statutory minimum to reflect a defendant's cooperation when the Government has not authorized such a sentence, but has instead moved for a departure only from the applicable Guidelines range. . . . Moreover, we do not read § 5K1.1 as attempting to exercise this nonexistent authority.

*Id.* at 126-27. The *Melendez* Court held that, before a district court could sentence below a statutory mandatory minimum, the government must specifically move for such a departure. *Id.* at 129-30.

In *United States v. Johnson*, 393 F.3d 466 (4th Cir. 2004), we applied *Melendez* and recognized that the particular type of motion for substantial assistance consideration determines the type of departure a district court is authorized to make. We explained that,

> [w]hen a statutory minimum sentence is involved in the case, a § 5K1.1 motion is less defendant-friendly than a § 3553(e) motion. A § 3553(e) motion allows the district court to depart below both the statutory minimum sentence and the low-end of the Guideline range. However, a § 5K1.1 motion does not allow the court to depart below the statutory minimum sentence.

*Id.* at 470 n.4.

In this case, in the plea agreement, the government vowed to make a § 5K1.1 motion, which it did at sentencing. Absent a § 3553(e) motion, the district court lacked the authority to sentence Allen below the statutory mandatory minimum of fifteen years.

After we raised the § 3553(e) issue *sua sponte* at oral argument, counsel for the government, while on the one hand conceding that the district court lacked the authority to impose a sentence of less than fifteen years, unabashedly represented on the other hand that the gov-

ernment's one level downward departure motion under § 5K1.1 in the plea agreement and at sentencing was intended to include a motion for downward departure under § 3553(e). Counsel for Allen argued to this court that the parties' course of dealing suggests that the parties and the district court worked from the premise that the government's § 5K1.1 motion encompassed a motion pursuant to § 3553(e). In fact, counsel for Allen indicated that Allen would not have pled guilty if the government had not agreed to a possible sentence below the statutory mandatory minimum based either on duress or Allen's criminal history category over-representing his criminal history. Finally, counsel for the government represented that it was "office policy" for the District of Maryland that a motion made pursuant to § 5K1.1 includes a § 3553(e) motion.

In our view, we cannot accept the parties' invitation to view the record as suggesting that the government made a § 3553(e) motion either in the plea agreement or at sentencing. First, the government's departure motion, both orally and in writing, was explicitly made pursuant to § 5K1.1. Indeed, there was no mention below by either party of a motion made pursuant to § 3553(e), and the district court did not mention § 3553(e) at any time when ruling on the various motions for downward departure from the sentencing range or in imposing the sentence of sixty-three months. Moreover, the parties' briefs filed in this court make no mention of a § 3553(e) motion made below. Obviously, the words employed in the plea agreement and used at sentencing set forth the best evidence of the government's intentions concerning possible departures. Second, the plea agreement clearly intimates the implementation of the statutory mandatory minimum sentence of fifteen years. The plea agreement provided that, in the event Allen was found to be an Armed Career Criminal under 18 U.S.C. § 924(e), he was subject to a "minimum mandatory sentence of fifteen (15) years without parole and up to life imprisonment without parole." The plea agreement also provided that, "regardless of the applicability" of an acceptance of responsibility reduction, the court was "required to impose a minimum mandatory sentence of fifteen years without parole pursuant to 18 U.S.C. Section 924(e)." This latter provision of the plea agreement is most telling, as it recognizes that the court was "required" to impose the statutory mandatory minimum sentence. Third, in the plea agreement, the government specifically reserved the right to appeal a sentence below the statutory

mandatory minimum sentence. If the government intended to make a § 3553(e) motion in the plea agreement, then there was no reason to include the statutory mandatory minimum reservation of rights provision in the appeal waiver portion of the plea agreement. Finally, we cannot place much stock in the parties' reliance on the United States Attorney for the District of Maryland's policy that a motion made pursuant to § 5K1.1 includes a § 3553(e) motion. There simply is no evidence in the record, other than the parties' unsupported allegations, suggesting that this policy, which is incongruous with settled precedent from this court and the United States Supreme Court, does, in fact, exist.

## III

In sum, in the absence of a motion pursuant to § 3553(e), a sentence below the statutory mandatory minimum was not permitted.[4] Accordingly, we vacate Allen's sentence and remand for resentencing.[5]

---

[4]Although it may be argued that the government waived its right to challenge the district court's failure to sentence Allen to the statutory mandatory minimum sentence of fifteen years, the government's departure arguments on appeal necessarily encompass the questions of whether the court began at the right starting point for a departure (either 180 or 168 months) and whether the court was legally entitled to depart below a sentence of fifteen years. This latter question brings into play the § 3553(e) issue decided by us today; thus, we see no merit to a waiver argument. In any event, in exercising our appellate discretion, we can correct plain errors even when the government fails to raise the issue. *Cf. United States v. Perkins*, 108 F.3d 512, 517 (4th Cir. 1997) ("[T]he district court's plain error allowed Perkins to receive an unwarranted 52-month reduction, thereby affecting the substantial rights of the government and the people of the United States that this defendant be sentenced correctly" and "[t]he bestowing of a windfall sentence reduction . . . also seriously affects the fairness, integrity, and public reputation of judicial proceedings.") (citation and internal quotation marks omitted).

[5]Given counsel for the government's concession at oral argument that he intended the § 5K1.1 motion to include, albeit *sub silentio*, a § 3553(e) motion as well, one would assume that the government has obligated itself to do so on remand. Assuming the government makes the appropriate § 3553(e) motion on remand, in sentencing Allen, the district court must first "calculate (after making the appropriate findings of fact)

the range prescribed by the guidelines." *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). Next, the court must consider whether a sentence within the advisory sentencing range "serves the factors set forth in § 3553(a) and, if not, select a sentence that does serve those factors." *United States v. Green*, 436 F.3d 449, 456 (4th Cir. 2006). To select a sentence that serves the § 3553(a) factors, the court "should first look to whether a departure is appropriate based on the Guidelines" and, "[i]f an appropriate basis for departure exists, the district court may depart." *United States v. Moreland*, 437 F.3d 424, 432 (4th Cir. 2006). "If the resulting departure range still does not serve the factors set forth in § 3553(a), the court may then elect to impose a non-guideline sentence (a 'variance sentence')." *Id.* Regardless of the sentence ultimately imposed, the court *must fully and articulately explain* its reasons for choosing a given sentence, especially if a departure or variance is involved. *Id.*; *Hughes*, 401 F.3d at 546 & n.5.