**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 08-5128**

UNITED STATES OF AMERICA,

              Plaintiff - Appellee,

        v.

HARRY EDMUND LESHEN, a/k/a Harry E. Leshen, II,

              Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Newport News.   Rebecca Beach Smith, District Judge.  (4:08-cr-00053-RBS-TEM-1)

Argued: March 26, 2010          Decided: November 10, 2011

Before MICHAEL[1] and DAVIS, Circuit Judges, and Eugene E. SILER, Jr., Senior Circuit Judge of the United States Court of Appeals for the Sixth Circuit, sitting by designation.

Vacated and remanded by unpublished per curiam opinion.

**ARGUED:** Frances H. Pratt, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant.   Richard Daniel Cooke, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.   **ON BRIEF:** Michael S. Nachmanoff, Federal Public

---

[1] Judge Michael heard oral argument in this case but passed away before the decision was filed. The decision is filed by a quorum of the panel pursuant to 28 U.S.C. § 46(d).

Defender, Alexandria, Virginia, Keith Loren Kimball, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Norfolk, Virginia, for Appellant. Dana J. Boente, Acting United States Attorney, Alexandria, Virginia, Timothy R. Murphy, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Newport News, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Appellant Harry Edmund Leshen pled guilty without a plea agreement to one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Leshen's presentence investigation report (PSR), adopted by the district court, increased his base offense level because he had been convicted of two or more "crime[s] of violence" under U.S.S.G. § 4B1.1 (the Career-Offender Guideline), as defined in U.S.S.G. § 4B1.2(a). On appeal Leshen argues for the first time that his prior conviction for grand larceny is too old to be the basis of the enhancement, and that his two convictions for sex offenses are not crimes of violence. The government contends that the sex offenses are "forcible sex offenses" and thus constitute crimes of violence. For the reasons explained below we vacate Leshen's sentence and remand for resentencing.[2]

---

[2] At Leshen's request, and by order entered on January 11, 2011, we placed this appeal in abeyance pending the court's en banc consideration of United States v. Vann, 620 F.3d 431 (4th Cir. 2010) (affirming enhanced sentence for violation of 18 U.S.C. § 922(g)(1) pursuant to the Armed Career Criminal Act), which had been relied on by the government in a post-argument Rule 28(j) submission. Upon rehearing en banc, the enhanced sentence imposed in Vann was vacated. See United States v. Vann, 2011 WL 4793230, No. 09-4298 (4th Cir. Oct. 11, 2011) (en banc).

On May 13, 2008, a federal grand jury sitting in the Eastern District of Virginia returned an indictment charging Leshen with one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). J.A. 6-7. On July 18, 2008, Leshen waived his right to have his plea taken before the district court and pled guilty before a magistrate judge. J.A. 8-25. The magistrate judge set a sentencing hearing for October 27, 2008, and ordered a probation officer to prepare a PSR. J.A. 23-24. At sentencing the district court accepted Leshen's guilty plea and found him guilty. J.A. 43. The district court also adopted the PSR that is the basis of Leshen's appeal. Id.

The criminal history portion of the PSR details three sets of convictions at issue here. Leshen was convicted of grand larceny, a felony, in Virginia in 1988. J.A. 79. In 1996 in Pennsylvania he was convicted of aggravated indecent assault, indecent assault, and corruption of a minor.[3] J.A. 80-81. And in 2008 in Kentucky Leshen pled guilty to and was convicted of

---

[3] Only the aggravated indecent assault conviction could qualify as a predicate offense under the Career-Offender Guideline because the other offenses are not punishable by imprisonment for more than one year, as the Guideline requires. See Pa. Cons. Stat. Ann. §§ 3126(b), 6301.

third-degree rape and third-degree sodomy.[4] J.A. 84-85. Applying the relevant Guideline, U.S.S.G. § 2K2.1, the probation officer initially set Leshen's base offense level at 26 because the firearm was a semiautomatic weapon "that is capable of accepting a large capacity magazine and the defendant committed the instant offense subsequent to sustaining two felony convictions for crimes of violence." J.A. 95. The PSR elsewhere cited Leshen's convictions for larceny and third-degree rape, J.A. 75, 77, but did not assign any criminal history points to the larceny conviction, J.A. 96.

The PSR set the final base offense level at 23 on the basis of Leshen's acceptance of responsibility. J.A. 77-78, 99. The PSR deemed Leshen to have a criminal history category of III. J.A. 96-98. Based on these figures, the PSR calculated a Guidelines range of 57 to 71 months. J.A. 99. The PSR calculation properly assigned only one criminal history point to the Kentucky convictions because he had not yet been sentenced for those offenses. J.A. 97; see U.S.S.G. § 4A1.2(a)(4). Since then Leshen has been sentenced in Kentucky to two five-year terms to run consecutively to one another and consecutively to his federal sentence.

---

[4] Only the third-degree rape conviction could qualify as a predicate offense. See U.S.S.G. §§ 2K2.1 cmt. n.10, 4A1.2(a)(2).

At the sentencing hearing the district court adopted the PSR and its Guidelines calculation, to which Leshen did not object.  J.A. 29-35, 48-52.  In pronouncing the sentence the court explained, "frankly I think the Guidelines are pretty generous, given your criminal background here and your record. But I am going to sentence you within the Guidelines at the top end of 71 months."  J.A. 56.  Leshen timely filed a notice of appeal on November 6, 2008.  J.A. 69.

II.

When a defendant unlawfully possesses a firearm in violation of 18 U.S.C. § 922(g)(1) and the weapon is semiautomatic and can accept a large-capacity magazine, the defendant receives a base offense level of at least 20. U.S.S.G. § 2K2.1(a).  The base offense level increases to 22 if the defendant has a prior conviction for a crime of violence, and to 26 for two or more such convictions.  Leshen challenges the increase in his base offense level from 20 to 26, arguing the district court erred in using his larceny conviction because it was too old, and erred in using his convictions for sex offenses because they are not crimes of violence.  Because Leshen did not object below, we review for plain error.  See United States v. Lynn, 592 F.3d 572, 576-77 (4th Cir. 2010).  To prevail Leshen must demonstrate that (1) an error occurred that

6

(2) was plain and (3) affected the outcome of the sentencing, and that (4) the appellate court should exercise its discretion to correct the error because it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." Puckett v. United States, 129 S. Ct. 1423, 1429 (2009) (internal quotations and citations omitted).

We conclude that the larceny conviction cannot increase Leshen's base offense level, and that — notwithstanding Leshen's heavy burden — the district court plainly erred in classifying Leshen's prior sex offenses as crimes of violence.

A.

We first consider the larceny conviction. The government does not dispute that it would be plain error to increase Leshen's base offense level on account of that 1988 conviction. U.S. Br. at 13-14. We agree. Only prior felonies receiving criminal history points under U.S.S.G. § 4A1.1(a)-(c) count for career-offender purposes. U.S.S.G. § 2K2.1 cmt. n.10. The larceny conviction here received no criminal history points because it exceeded the Guidelines' fifteen-year counting period. See U.S.S.G. § 4A1.2(e).

The record does not reveal whether the district court relied on the larceny conviction. On the one hand, Worksheet C of the PSR assigns no criminal history points to the conviction. J.A. 96. On the other hand, the narrative portion of the PSR

7

describing the underlying felony convictions giving rise to Leshen's § 922(g)(1) disqualification cites the larceny conviction and the Kentucky conviction, but not the Pennsylvania conviction. J.A. 75. At sentencing the district court remarked that the larceny conviction "hasn't actually been counted in some of these calculations." J.A. 55.

It is enough to say that the conviction cannot increase Leshen's base offense level, and that any such error would be plain. Such error would not affect the calculation of Leshen's Guideline range, however, unless the district court plainly erred in counting at least one of his other convictions as a crime of violence. We now address those offenses.

B.

The term "crime of violence" in U.S.S.G. § 2K2.1(a) has the same meaning as in the Career-Offender Guideline. U.S.S.G. § 2K2.1 cmt. n.1. The Career-Offender Guideline, in turn, contains a two-pronged definition:

> The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that –
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a). The application note elaborates:

8

"Crime of violence" includes murder, manslaughter, kidnapping, aggravated assault, <u>forcible sex offenses</u>, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling. Other offenses are included as "crimes of violence" if (A) that offense has as an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the conduct set forth (i.e., expressly charged) in the count of which the defendant was convicted involved use of explosives (including any explosive material or destructive device) or, by its nature, presented a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2 cmt. n.1 (emphasis added).

Two methodological points inform whether an offense constitutes a crime of violence. First, we utilize the familiar "categorical approach," looking only to the elements of the offense. <u>United States v. Seay</u>, 553 F.3d 732, 737 (4th Cir. 2009). Thus "we consider the offense generally, that is to say, we examine it in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." <u>Begay v. United States</u>, 128 S. Ct. 1581, 1584 (2008).[5] Second, we are guided by the "nearly identical" and "materially indistinguishable" language defining the term "violent felony" in the Armed Career Criminal Act

---

[5] We leave to the district court in the first instance consideration of whether the decision in <u>Sykes v. United States</u>, --- U.S.----, 131 S.Ct. 2267 (2011), bears on the issues presented here.

(ACCA).[6]  United States v. Rivers, 595 F.3d 558, 560 n.1 (4th Cir. 2010).  Our "precedents evaluating the ACCA apply with equal force to U.S.S.G. § 4B1.2."  United States v. Jarmon, 596 F.3d 228, 231 (4th Cir. 2010).

We hold that the district court plainly erred by counting Leshen's convictions for third-degree rape and aggravated indecent assault as crimes of violence.  Although the government bases its argument on the commentary, we begin with the two prongs of the definition.

1.

It is clear enough that neither the Kentucky nor the Pennsylvania offense has as an element the use, attempted use, or threatened use of physical force.  "Physical force" as used here means "violent force — that is, force capable of causing physical pain or injury to another person."  Johnson v. United States, 130 S. Ct. 1265, 1271 (2010).  A person commits third-degree rape in Kentucky "when . . . (b) [b]eing twenty-one (21)

_____

[6] The ACCA provides that

> the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year . . . that (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B).

10

years old or more, he or she engages in sexual intercourse with another person less than sixteen (16) years old." Ky. Rev. Stat. Ann. § 510.060. Similarly, in Pennsylvania

> a person who engages in penetration, however slight, of the genitals or anus of a complainant with a part of the person's body for any purpose other than good faith medical, hygienic or law enforcement procedures commits aggravated indecent assault if . . . (7) the complainant is less than 13 years of age; or (8) the complainant is less than 16 years of age and the person is four or more years older than the complainant and the persons are not married to each other.

18 Pa. Cons. Stat. Ann. § 3125. Because physical force is not necessary under the Kentucky and Pennsylvania statutes, they do not constitute crimes of violence under the first prong. Other circuits, dealing with similar statutes, have reached the same conclusion. See, e.g., United States v. Wynn, 579 F.3d 567, 573 (6th Cir. 2009); United States v. Dennis, 551 F.3d 986, 989 (10th Cir. 2008).

Bolstering our conclusion is that both Kentucky and Pennsylvania have in place comprehensive schemes that categorize some sex offenses as "forcible" and others as "nonforcible." Compare Ky. Rev. Stat. Ann. § 510.040 (first-degree rape requires "forcible compulsion") with id. § 510.060 (no such requirement for third-degree rape); compare 18 Pa. Cons. Stat. Ann. § 3121 (rape requires "forcible compulsion") with id. § 3125 (no such requirement for aggravated indecent assault).

11

Especially revealing are the states' expansive definitions of "forcible compulsion." See 18 Pa. Cons. Stat. Ann. § 3101 (defining term as "[c]ompulsion by use of physical, intellectual, moral, emotional or psychological force, either express or implied"); Van Dyke v. Commonwealth, 581 S.W.2d 563, 565 (Ky. 1979) ("'Forcible compulsion' may consist of physical force or threats that do not cause substantial physical pain or an impairment of physical condition."). Because Leshen's offenses did not satisfy even these broad definitions of "forcible," we are not persuaded that the offenses have as elements the use of "violent" force.

We have explained that sentencing courts must respect state schemes that distinguish forcible and nonforcible sex offenses. In United States v. Thornton, 554 F.3d 443 (4th Cir. 2008), we dealt with a Virginia law making it a felony to "carnally know, without the use of force, a child" between thirteen and fifteen years of age. Va. Code Ann. § 18.2-63. We reasoned that "[a]lthough . . . a minor victim cannot give legal consent to sexual activity, the victim's inability to consent does not erase the Code's distinction between forcible and nonforcible sexual offenses." Thornton, 554 F.3d at 448. Because "the Virginia General Assembly considers forcible and nonforcible sexual offenses to present different risks that are punishable in different ways," we rejected the attempt to

12

conflate the "nonforcible carnal knowledge offense . . . with Virginia's forcible sexual offenses through the concept of constructive force." Id.

We turn next to the second prong. Here too we conclude that Leshen's prior offenses plainly do not constitute crimes of violence. The second prong contains both a listing of offenses as well as an "otherwise" clause for offenses that present a "serious potential risk of physical injury." Because the second prong does not expressly list sex offenses (whether forcible or not) as crimes of violence, the offenses constitute crimes of violence only if they fall within the "otherwise" clause. Precedents from the Supreme Court and this court foreclose this argument. In Begay the Supreme Court held that drunk driving is not a "violent felony" under the "otherwise" clause of the ACCA. 128 S. Ct. at 1584. The Court reasoned that drunk driving "is simply too unlike the provision's listed examples for us to believe that Congress intended the provision to cover it." Id. The listing of offenses "illustrate[s] the kinds of crimes that fall within the statute's scope," all of which "typically involve purposeful, violent, and aggressive conduct." Id. at 1584-86 (internal quotations and citations omitted). To constitute a violent felony, an offense must be "roughly similar, in kind as well as in degree of risk posed, to the examples themselves." Id.

13

We applied Begay in Thornton, where we held that Virginia's carnal-knowledge statute is not a violent felony under the same clause. 554 F.3d at 444. We explained that it is not enough merely that adult-minor sexual activity presents a generalized risk of harm. Id. at 448. Instead, "the offense must also be like those listed [in the second prong], both in kind and degree of risk." Id. at 447. Unlike violations of the listed offenses, however, violations of the carnal-knowledge statute do not "show an increased likelihood that the offender is the kind of person who might deliberately point the gun and pull the trigger." Id. at 449. The risks associated with violations of the carnal-knowledge statute "are not immediate or violent in nature and do not inherently support an inference that an offender will later commit a violent crime." Id. Nor can the concept of constructive force "shoehorn the carnal knowledge offense into the definition of a violent felony." Id. at 448. The offense at issue in Thornton, we concluded, simply was not sufficiently "violent" and "aggressive" to constitute a violent felony. Id. at 448-49.

In light of these decisions we hold that the Kentucky and Pennsylvania offenses plainly are not crimes of violence under the "otherwise" clause. Both offenses closely resemble the carnal-knowledge statute in Thornton: all three statutes criminalize adult sexual contact with minors, notwithstanding

14

legally ineffective consent in-fact; all three statutes fall on the nonforcible side of their respective states' classification schemes for sex offenses; and all three involve physical contact of some kind. Because the Kentucky and Pennsylvania offenses are for nonforcible offenses, and because both states have separate offenses in place to account for situations in which force is present, we conclude that the "typical" violation of the statutes here is not sufficiently violent and aggressive to be a crime of violence. See United States v. Terrell, 593 F.3d 1084, 1090-91 (9th Cir. 2010) (holding that simple rape is a crime of violence under the ACCA because physical force typically is present, unlike in statutory rape).

2.

The Government frames its argument in terms of the commentary to the guidelines, arguing that Leshen's convictions constitute "forcible sex offenses" under the application note and thereby are crimes of violence. This is so, we are told, because the application note shows that the Career-Offender Guideline is broader than the ACCA, at least for sex offenses. It follows, according to the government, that "[a]ny offense that qualifies as a forcible sex offenses [sic] is categorically a crime of violence." Appellee's Br. at 17. The government relies on our decision in United States v. Pierce, 278 F.3d 282 (4th Cir. 2002), for the proposition that "taking indecent

15

liberties with a child is a forcible sex offense." Appellee's Br. at 17-18. This argument is unavailing.

We observe at the outset that Guidelines commentary "that interprets or explains a guideline is authoritative unless it . . . is inconsistent with, or a plainly erroneous reading of, that guideline." Stinson v. United States, 508 U.S. 36, 42 (1993); United States v. Payton, 28 F.3d 17, 19 (4th Cir. 1994). When such an inconsistency arises "the Sentencing Reform Act itself commands compliance with the guideline." Stinson, 508 U.S. at 42. Thus, we have recognized our "duty to harmonize the U.S. Sentencing Guidelines and commentary." United States v. Benkahla, 530 F.3d 300, 312 (4th Cir. 2008).

It is clear that the Kentucky and Pennsylvania offenses do not fit within the commentary. To begin, we are skeptical of the commentary's utility because it was drafted before Begay and thus does not consider the implications of that decision. Furthermore, the very inclusion of the modifier "forcible" demonstrates that the Sentencing Commission contemplates some sex offenses as nonforcible. As we have explained, the offenses here do not qualify as forcible. We also find significant that in all other respects the commentary, text, and the ACCA have identical coverage. All other offenses listed in the commentary (1) plainly have as elements the use of physical force (e.g., murder, kidnapping, aggravated assault),

16

(2) are repetitions of offenses enumerated in the Guideline text (e.g., burglary of a dwelling, arson, extortion), or (3) by their terms present a serious potential risk of physical injury that is similar in kind and degree to listed offenses (e.g., manslaughter, robbery). But see United States v. Peterson, 629 F.3d 432 (4th Cir. 2011)(involuntary manslaughter under North Carolina law not a "crime of violence" under the Career-Offender Guideline). Given the otherwise parallel coverage of the three sources, we find unconvincing the argument that the Commission singled out sex offenses for broader coverage.

What is more, the government cannot, simply by referring to the commentary and Pierce, escape the need to link the commentary (and Leshen's convictions) to either prong of the definition. "[F]orcible sex offenses" does not have freestanding definitional power. And while Pierce held that an offense similar to the ones at issue here involves forcible sex, it never explained the prong under which the term falls. Pierce's holding is grounded in the concept of constructive force, but that concept no longer satisfies either prong of the definition. Under the first prong constructive force is not the same as physical force. Cf. United States v. Chacon, 533 F.3d 250, 255-56 (4th Cir. 2008). As for the second prong, even the government concedes in light of Begay and Thornton that Pierce is no longer controlling. Appellee's Br. at 18. Furthermore, in

17

light of the en banc court's per curiam opinion in Vann, see supra n.2, the government's reliance on Pierce is plainly unavailing.

Nor are we swayed by the government's invocation of the definition of the term in U.S.S.G. § 2L1.2 (the Immigration Guideline). "For purposes of [that] subsection[,] . . . '[c]rime of violence' means . . . forcible sex offenses (including where consent to the conduct is not given or is not legally valid, such as where consent to the conduct is involuntary, incompetent, or coerced), statutory rape, sexual abuse of a minor . . . ."). U.S.S.G. § 2L1.2 cmt. n.1(B). Prior to the addition of the parenthetical clause, we held that a Maryland statute, which prohibits sexual intercourse with a victim "[w]ho is mentally defective, mentally incapacitated, or physically helpless" when the defendant should be aware of the disability, is a crime of violence. Chacon, 533 F.3d at 255. We noted that "although the use of force necessarily involves a degree of compulsion, it can be effected through 'power' or 'pressure,' which do not necessarily have physical components." Id. at 257.

We have no difficulty distinguishing the Immigration Guideline. We begin with the obvious point that the Immigration Guideline is broader on its face than the Career-Offender Guideline. The former enumerates statutory rape as a crime of

18

violence, while the latter omits it altogether. And the Commission, when it added the parenthetical clause to the Immigration Guideline in 2008, declined to add the clause to the Career-Offender Guideline. See Amendments to the Sentencing Guidelines, Policy Statements, and Official Commentary at 29-30, U.S. Sentencing Commission (May 1, 2008), available at http://www.ussc.gov/2008guid/finalamend08.pdf. These features demonstrate that the Commission is aware of the distinction between forcible and nonforcible offenses and knew how to treat them alike when it so sought. We agree that the Immigration definition "has always expressly covered more sex crimes than [the Career-Offender] definition, and there is nothing irrational about the Sentencing Commission's decision to continue that approach with the 2008 amendment adding language to [the Immigration Guideline] alone." Wynn, 579 F.3d at 575.

Another significant difference is that the Immigration Guideline defines "crime of violence" entirely in commentary, while the Career-Offender Guideline sets forth a complete definition in the text. Thus, in Chacon we did not face the possibility that the text and commentary could come into conflict. Here, however, the commentary merely offers further guidance on a term fully defined in the text. In interpreting the Career-Offender Guideline we decline to create the tension

between text and commentary that would result from treating the Kentucky and Pennsylvania offenses as crimes of violence.

3.

We next determine whether the error affected the outcome of the sentence and whether our failure to correct it would "seriously affect[] the fairness, integrity, or public reputation of judicial proceedings." Puckett, 129 S. Ct. at 1429. We answer both questions affirmatively.

To prevail Leshen must show that the error "affected the outcome of the district court proceedings." United States v. Olano, 507 U.S. 725, 734 (1993). For sentencing errors a defendant "must establish that [the imposed] sentence was longer than that to which he would otherwise be subject." United States v. Angle, 254 F.3d 514, 518 (4th Cir. 2001) (en banc). We have held that a defendant was entitled to resentencing when sentenced under an erroneously calculated Guidelines range, even when the sentence imposed was between the correct and erroneous ranges. United States v. McCrary, 887 F.2d 485, 489 (4th Cir. 1989). This is because we "cannot confidently assume" that the factors influencing a specific term of imprisonment in the erroneous range necessarily would cause the court to select the same term within the correct range. Id. at 489. This principle is just as valid after United States v. Booker, 543 U.S. 220 (2005). After Booker "the Guidelines should be the starting

20

point and the initial benchmark" for sentencing. Gall v. United States, 552 U.S. 38, 49 (2007). From this starting point the district court then weighs specific factors relevant to the defendant to arrive at a reasonably appropriate sentence. United States v. Diaz-Ibarra, 522 F.3d 343, 347 (4th Cir. 2008).

We are confident that the error affected Leshen's sentence. The enhancement increased Leshen's base offense level from 17 to 23. Even with his criminal history category now at IV (rather than III as at his initial sentencing), his Guidelines range would be 37 to 46 months, 20 to 25 months shorter than the range applied at his original sentencing (57 to 71 months). See U.S.S.G. Ch. 5, Pt. A. While the district court sentenced Leshen at the top of the Guidelines range, and while the court did remark that the range was "pretty generous" in light of Leshen's record, in its very next breath the court indicated it would stay within the Guidelines range. J.A. 56.

Finally, we determine whether we ought to exercise our discretion to correct the error. We have held that a sentence to a term of supervised release 11 months longer than authorized by statute seriously affects the fairness of judicial proceedings. United States v. Maxwell, 285 F.3d 336, 342-43 (4th Cir. 2002). In Maxwell we stated that "no court of justice would knowingly require a man to endure significant restrictions on his liberty as provided under supervised release for nearly a

21

year longer than deserved." Id. at 343; cf. United States v. Allen, 450 F.3d 565, 570 & n.4 (4th Cir. 2006) (sentence below statutory minimum was plain error and warranted resentencing). We exercise our discretion to correct the error here as well.

Not to resentence Leshen would be even more "fundamentally unfair" than not to resentence the defendant in Maxwell. There the excess time was a mere 11 months, but here the Guidelines range is 20 to 25 months shorter than his initial sentence. Furthermore, the restriction on liberty in Maxwell was mere supervised release, but here it is incarceration. We emphasize as well that the costs of remand are minimal. Whereas noticing a trial error necessitates a new trial, noticing a sentencing error results in, at most, a remand for resentencing.

The government cites the circumstances underlying Leshen's convictions to oppose resentencing. See U.S. Br. at 27. We decline the government's invitation. As we have made clear the district court is free to — and did — consider that record in reaching a reasonable sentence. Leshen also has now been sentenced in Kentucky for those very offenses, receiving a total of ten years' imprisonment to run consecutively to his federal sentence. We will not count that record for a third time to deny Leshen the benefit of a properly calculated Guidelines range.

22

III.

For the foregoing reasons, the judgment is vacated and the case is remanded for resentencing proceedings consistent with this opinion.

VACATED AND REMANDED